**ATLANTIC GREYHOUND LINES, Inc.,**
**v. KEESEE.**

**ATLANTIC GREYHOUND CORPORA-**
**TION v. SAME.**

Nos. 7343, 7474.

United States Court of Appeals for the
District of Columbia.

Decided March 11, 1940.

Rehearing Denied April 8, 1940.

STEPHENS, Associate Justice, dissenting in part.

Henry I. Quinn, of Washington, D. C., for appellant in No. 7343.

Henry I. Quinn and Richard L. Galiher, both of Washington, D. C., for appellant in No. 7474.

Samuel Bogorad, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

These appeals arose out of an action by Hannah Keesee to recover damages for the death of her husband, John L. Keesee, in an accident in Virginia. The wrongful death statute of Virginia provides that suit shall be brought "by and in the name of the personal representative of such deceased person;" also that the jury "may award such damages as to it may seem fair and just, not exceeding ten thousand dollars, and may direct in what proportion they shall be distributed to the surviving widow or husband and children and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased. * * * Nothing shall be apportioned to the deferred class until the preferred class has been exhausted." Va. Code, 1936, § 5787. The Virginia Code also provides, in § 5123, that a wife who deserts her husband shall be barred of all interest in his estate.

The appellee, Mrs. Keesee, was appointed administratrix here, and sued Greyhound here on August 25, 1936. H. B. Keesee, a brother of the deceased, represented to the West Virginia court that Mrs. Keesee had deserted her husband, and was appointed administrator in West Virginia. In March, 1937, he sued Greyhound there, without notice to Mrs. Keesee and without stating in his complaint that John L. Keesee left a widow. Counsel for Greyhound notified Mrs. Keesee, apparently on May 25, that the West Virginia case would be tried on May 28, that the brothers and other relatives of the deceased would attempt to prove that she had deserted, and that she should protect her interests. She went to West Virginia and on May 28 tendered a motion to intervene and to postpone the hearing so that she might proceed to have the appointment of H. B. Keesee as administrator set aside. He opposed this motion, and she was not allowed to file it. He testified that she and her husband had separated. Though she remained in the courtroom, neither party called her as a witness. The trial resulted in a verdict for $500 in favor of H. B. Keesee. But Greyhound was not compelled to pay him this sum; on the contrary, it fought for the privilege. On Keesee's motion, and over Greyhound's objection, the court set aside the verdict and ordered a new trial. The Supreme Court of Appeals of West Virginia, at the instance of Greyhound, reinstated the verdict, 197 S.E. 522. On the day judgment was entered, Greyhound paid it.

Meanwhile Mrs. Keesee's action in the District of Columbia came to trial, after the court had denied a motion by Greyhound for a stay pending the West Virginia action. It was shown that she had not deserted her husband, and she obtained a verdict of $4000. Greyhound filed a motion for a new trial, and alleged error in denying the stay. While this motion was pending, the West Virginia judgment was paid to H. B. Keesee; and this was urged below as an additional ground for a new trial here. The District Court overruled the motion and entered judgment on the verdict. Greyhound appeals from that judgment, and also from a decree dismissing its bill for an injunction to prevent collection of the judgment.

The injunction suit was rightly dismissed. Appellant alleged in its bill that appellee knew in 1936 that H. B. Keesee had been appointed administrator and in-

tended to sue. It is not clear that this fact is material. In any case, Greyhound offers no excuse for failing to present it in the lawsuit here. Cragin v. Lovell, 109 U.S. 194, 198, 3 S.Ct. 132, 27 L.Ed. 903; Riverside Oil & Refining Company v. Dudley, 8 Cir., 33 F.2d 749, 752. As the other facts on which the injunction suit is based were presented in the lawsuit, appeal from the judgment in that suit was an adequate remedy. Ewing v. City of St. Louis, 72 U.S. 413, 18 L.Ed. 657; Fidelity Storage Co. v. Urice, 56 App.D.C. 202, 12 F.2d 143.

Appellee moved to dismiss the appeal in the lawsuit on the ground that it was late. Judgment was entered on December 16, 1938 and notice of appeal was filed on January 7, 1939. If Sundays and holidays are excluded, this was seventeen days after judgment; if included, twenty-two days. Rule 10 of this court requires appeals to be filed within twenty days after judgment, and Rule 36 provides that limitations of time prescribed by the rules shall exclude Sundays and legal holidays. Appellee contends that Rule 36 has been superseded by Rule 6(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides for exclusion of Sundays and holidays only when the period prescribed is less than seven days. Rule 6(a) governs "any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute." Neither "these rules" nor "order of court", in the Rules of Civil Procedure, can be construed to apply to Rules 10 and 36 of this court. Accordingly the appeal was timely.

Appellee also moved to dismiss the appeal on the ground that no statement of points to be relied upon was served with the designation of record. Rule 75(d) of the Rules of Civil Procedure requires a statement of points to be served "if the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action." In this case, five suits arising out of the same accident were consolidated for trial. Appellant says, and appellee does not deny, that appellant's designation comprised the complete record and all the proceedings and evidence "in the portion of the action from which the appeal was taken." We think this was a sufficient designation for the purposes of the rule. It left appellee in no need of the protection of the rule, for it left her in no danger of finding, on the argument of the appeal, that needed parts of the record were missing.

At all events, nothing in Rule 75(d) makes failure to file a statement of points with such a designation as was made here a mandatory ground for dismissing the appeal.

"It is settled law in this jurisdiction that the action of the trial court in granting or refusing a new trial is not reviewable, unless there has been an abuse of discretion." Kenyon v. Youngman, 59 App.D.C. 300, 40 F.2d 812. There is no abuse here.

The chief grounds of the motion for a new trial are the West Virginia judgment, and the refusal of the District Court here to stay proceedings pending the West Virginia suit. Appellant urges that that suit involved the same parties and the same cause of action as this one, and that appellee is concluded here by the judgment there. The burden of proving that the parties in the two suits were identical was appellant's. It introduced the West Virginia judgment, which is in favor of H. B. Keesee, Administrator. As far as appears, it did not see fit to introduce the West Virginia record. It does not suggest that the record, if introduced, would add strength to its position. It introduced nothing tending to show, and it does not suggest, that H. B. Keesee sought to protect the widow's interest or presented any claim on her behalf. Its contention that she is concluded by the West Virginia suit rests on the proposition that, in the circumstances of this case, "any administrator who filed a suit against this defendant would in the eyes of the law represent her." We think this proposition is erroneous.

Appellant cites Chicago, Rock Island & Pacific Ry. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, 53 A.L.R. 1265. There an Iowa court, in a suit between a railroad and the widow of one of its employees, had awarded compensation under the Iowa act. A separate suit, likewise for the benefit of the widow, brought in Minnesota by the employee's personal representative, resulted in an award under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq. The Supreme Court reversed this award, on the ground that it was barred by the judgment in the Iowa suit, since "the question of identity of parties * * * must be determined as a matter of substance and not of mere form. The essential consideration is that it is the right of the widow, and of no one else, which was presented and adjudicated in both courts." 270 U.S. at page 618, 46 S.Ct. at page 423, 70 L.Ed. 757, 53 A.L.R. 1265.

In the present case it was the right of the brothers and sisters of the deceased, and of no one else, which was presented and adjudicated in West Virginia. A somewhat parallel case is Spokane & Inland Empire Railroad Co. v. Whitley, 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060, L.R.A.1915F, 736. There the decedent was killed by the defendant railroad in Idaho. Under the Idaho wrongful death statute his widow and his mother were sole "heirs," taking equally; and "heirs or personal representatives" could sue. The administratrix, who was the widow, sued the railroad in the State of Washington, and recovered a judgment which was paid. The administratrix refused to divide the proceeds with the mother. The mother then sued the railroad in Idaho, and recovered. The Supreme Court affirmed this Idaho judgment, on the ground that the administratrix, in the Washington action, had not represented the mother. Both from the decision of the Idaho court and from "the accepted view of statutes similar to Lord Campbell's act," the Supreme Court inferred that in the enforcement of such statutes an administrator cannot represent a beneficiary without the beneficiary's consent; "Where the personal representative is entitled to sue, it is only as trustee for described persons." 237 U.S. at page 495, 35 S.Ct. at page 656, 59 L.Ed. 1060, L.R.A.1915F, 736. Likewise in Virginia the administrator, in a death action, "sues, not for the benefit of the estate, but primarily and substantially as trustee for certain particular kindred of the deceased." Anderson v. Hygeia Hotel Company, 92 Va. 687, 24 S.E. 269, 271. The death statute creates "a new and original right of action in the surviving relatives of the deceased * * * not a mere survival of the cause of action which had previously existed in the decedent." Virginia Iron, Coal & Coke Co. v. Odle's Adm'r, 128 Va. 280, 105 S.E. 107, 116.

The Virginia statute differs from the Idaho statute, and we do not assert that a disinterested administrator could not have sued as trustee for the widow without her consent. The fact remains that H. B. Keesee was not disinterested and did not sue as trustee for her. He sued as trustee for other relatives, including himself, on the theory that she was disqualified by desertion to share in the proceeds of recovery.[1] His suit was in denial, not in affirmation, of her rights. He could not at the same time represent her and refrain from presenting any claim which would permit the jury to "direct" that any portion of the judgment be "distributed" to her. To hold otherwise would allow her only the form and deny her the substance of representation. The substance, not the form, is controlling.[2] Since her rights are her own and not the decedent's, she or some one suing in her behalf is an indispensable party to a suit which is to determine her rights. Cases in which an administrator has enforced a claim of the deceased have no application here.

The West Virginia suit and the District suit differed not only as to parties in interest, but also as to the nature and amount of the injuries for which suit was brought. Mental anguish and pecuniary loss are elements of damage under the Virginia death act.[3] Obviously a widow may suffer more anguish and more loss than a brother. The West Virginia

---

[1] The opinion below states that he sued "without mention in the declaration that there was a surviving widow"; that "the trial proceeded along a course which utterly ignored her rights and interest as much so as though she had been proven dead"; that the elements of damage peculiar to a wife "were not made an issue in the case by the pleadings, the evidence, or otherwise"; and that "the potential right of Mrs. Keesee as sole beneficiary was never put in issue." The record shows that H. B. Keesee sought and obtained appointment as administrator by representing that Mrs. Keesee had deserted her husband; also that Greyhound represented to Mrs. Keesee that the brothers and other relatives of the deceased would attempt to prove in the West Virginia trial that Mrs. Keesee had deserted her husband and therefore was not entitled to share in any recovery. The record does not disclose the further evidence on which the findings of fact just quoted are based. But counsel for Greyhound does not attack those findings on that or any other ground; he attacks only the legal conclusions which the court drew from them. By implication he concedes the quoted findings to be correct, for he refers in his brief to the fact that H. B. Keesee "did not prove all that he might have proved concerning the damages and the beneficiaries who were to share the verdict of the jury."

[2] Spokane & Inland Empire R. R. Co. v. Whitley, supra; Chicago, Rock Island & Pacific Ry. Co. v. Schendel, supra.

[3] Portsmouth St. R. Co. v. Peed's Administrator, 102 Va. 662, 47 S.E. 850; Ratcliffe v. McDonald's Administrator, 123 Va. 781, 97 S.E. 307.

jury did not pass upon the question of the widow's suffering and loss. Accordingly, no possible recovery over against the West Virginia administrator could protect the widow's rights.

In our opinion McCarron v. New York Central Railroad Co.,[4] which appellant cites, cannot be reconciled with the Schendel and Whitley cases, supra.

Affirmed.

STEPHENS, Associate Justice, concurring in part, dissenting in part.

I agree with the result reached by the majority in respect of the injunction suit, No. 7474, and in respect of the motions to dismiss the appeals. I agree also with the tacit ruling that it was not improper for the trial court to consider the so-called "additional ground" for a new trial. It was not in substance an additional ground, but additional information in respect of the ground on which the motion was founded.

But I dissent in respect of the disposition of the case so far as concerns the question of res judicata. I think that a new trial should have been granted by the trial court, and that the case should now be returned with directions to grant a new trial and therein to give the appellant opportunity to plead and to prove that the issues and parties in the West Virginia action were identical with those in the instant case. In such event if the plea of res judicata therein entered failed for lack of proper proof, through the record in the West Virginia action, that the cause there involved identical issues and parties, then the appellee would be entitled to take her judgment. But if in the new trial the plea were successfully proved, then the appellant would not be exposed, contrary to the full faith and credit clause of the Constitution, to double liability. The present disposition of the case in my opinion exposes the appellant to the possibility of such double liability.

I think the opinion of the majority disregards two settled and fundamental principles of procedure: first, that proper determination of a plea of res judicata is dependent upon introduction into the case in which the plea is made of an authenticated copy of the entire record, including the judgment, in the other action; second, that the opinion of a trial court is not a part of the record, even if printed therein, and therefore statements of fact made in such

an opinion cannot be considered on appeal unless they otherwise appear from the record proper. In respect of the first of these principles, the Supreme Court, in United Shoe Machinery Corporation v. United States, 1922, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708 ruled that:

". . . to determine the effect of a former judgment pleaded as an estoppel, two questions must be answered: (1) Was the former judgment rendered on the same cause of action? (2) If not, was some matter litigated in the former suit determinative of the matter in controversy in the second suit? *To answer these questions we must look to the pleadings making the issues, and examine the record to determine the questions essential to the decision of the former controversy.*" [Italics supplied] [258 U.S. at 459, 42 S.Ct. 363, 66 L.Ed. 708]

See also Fennell v. United States, 5 Cir., 1933, 67 F.2d 768 wherein the judgment of a Texas probate court was asserted as a prior adjudication of the question involved in the Federal case. Ruling that it could not so operate, the Circuit Court of Appeals said:

"We think the judgment of the Texas probate court can be given no effect as an adjudication binding on the United States. It is unaccompanied by the record on which it is based, and we can know only by inference what the nature and origin of the case was, what issues were tried, what parties were proceeded against, and how they were served. A judgment without the record on which it was pronounced may be offered to prove the mere fact that such a judgment was rendered or to show a power or title under it, as that one is a receiver or an administrator or has bought property under it. *But when the judgment is set up as an estoppel or res adjudicata, the record on which it was rendered ought to accompany it to show the jurisdiction, the parties served, and the issues tried.*" [Italics supplied] [67 F.2d at 769]

In respect of the second principle stated above, the Supreme Court, in England v. Gebhardt, 1884, 112 U.S. 502, 5 S.Ct. 287, 28 L.Ed. 811 was presented with the question whether it could review a finding upon a question of diversity of citizenship, in the absence in the record proper of the data upon which the finding must have been made. A rule of the Supreme Court required a copy of the trial court's opinion to

---

4 239 Mass. 64, 131 N.E. 478.

be annexed to and transmitted with the record. The Supreme Court ruled:

"But as a writ of error brings up for review only such errors as are apparent on the face of the record, it follows that nothing can be considered . . . on such a writ . . . that is not presented in some appropriate form by the record. . . before the questions presented and decided . . . can be re-examined on a writ of error, they must be brought into the record by a bill of exceptions, or an agreed statement of facts, or a special finding in the nature of a special verdict, or in some other way known to the practice of courts of error for the accomplishment of that purpose. . . .

\* \* \*

"*Neither is the opinion of the court a part of the record.* Our Rule 8, sec. 2, requires a copy of any opinion that is filed in a cause to be annexed to and transmitted with the record, on a writ of error or an appeal to this court, *but that of itself does not make it a part of the record below.*" [Italics supplied] [112 U.S. at 505, 506, 5 S.Ct. 287, 28 L.Ed. 811]

See also 2 R.C.L., Appeal and Error, § 104; 4 C.J.S., Appeal and Error, page 1209, § 734. The basis of this principle is obvious. The duty of an appellate court is not to accept, but to *review*, the conclusions of the trial court, and in order to do this the appellate court must have before it the data, introduced in the case, upon which the trial court reached its conclusions. If this were not the rule, statements of fact included in a trial judge's opinion, but not borne out by the record proper, would be beyond either refutation or review, and what actuated the decision of a trial court could be withheld from both the parties and the reviewing tribunal. The mandate of the law to include all in the record upon which the decision was based is the guaranty of the law against secret proceedings. By this statement no reflection upon the trial judge in the instant case is intended. There may have been before him in some form on the motion for new trial material which, for some reason not apparent here, has not been included in the record. But I think it clear that orderly procedure requires absolute disregard of any matter of fact stated in his opinion, which, or the basis for which, does not also appear within the record proper.

The record in the instant case discloses no introduction into the proceeding below of the record of the West Virginia action. The majority opinion is based upon statements, a part of which appear in affidavits filed in support of the motion for a new trial, and the balance of which are made in the trial court's opinion. The former are to the effect that:

"H. B. Keesee, a brother of the deceased, represented to the West Virginia court, in a petition to the clerk made for letters of administration, that Mrs. Keesee had deserted her husband, and the letters issued by the clerk recited that it appears from the petition that Mrs. Keesee had deserted her husband; counsel for the appellant notified Mrs. Keesee that the West Virginia case would be tried on a given date, that the brothers and other relatives of the deceased would attempt to prove that she had deserted her husband and that she was therefore not entitled to share in any recovery, and that she should protect her interests; Mrs. Keesee went to West Virginia and on the date referred to tendered a motion to intervene and to postpone the hearing so that she might proceed to have the appointment of H. B. Keesee as administrator set aside; H. B. Keesee opposed this motion and Mrs. Keesee was not allowed to file it."

None of these statements of fact, except that concerning the motion to intervene and postpone, even purport to be a part of the record in the West Virginia wrongful death action itself. Moreover, the recital of desertion in the petition for letters and the reference thereto in the letters themselves are not judicial determinations of desertion, and, even if they were, they would not be binding upon Mrs. Keesee because the petition was filed and the letters were issued ex parte. As to the alleged refusal of the West Virginia court to allow Mrs. Keesee to intervene in order that she might have the appointment of H. B. Keesee as administrator set aside: In the absence of the full record of the West Virginia proceedings, we can not know what the legal basis or the legal consequence of this alleged ruling was so far as concerned the question whether or not Mrs. Keesee's rights were actually adjudicated in the West Virginia cause. Conceivably the West Virginia court may have denied the motion to intervene upon the ground that it was not necessary under the pertinent statutes for Mrs. Keesee actually to be a party—that her rights were necessarily involved in the case through the administrator.

The statements in the majority opinion taken from the trial judge's opinion are these:

"H. B. Keesee sued the appellant in West Virginia without notice to Mrs. Keesee and

without stating in his complaint that John L. Keesee left a widow; H. B. Keesee testified that Mrs. Keesee and her husband had separated; though Mrs. Keesee remained in the court room, at the trial of the West Virginia case neither party called her as a witness; H. B. Keesee did not sue as trustee for Mrs. Keesee, he sued as trustee for other relatives, including himself, on the theory that she was disqualified by desertion to share in the proceeds of recovery;[1] the West Virginia jury did not pass upon the question of the widow's suffering and loss."

I think it obvious that all of these statements, and those set out in the margin, are conclusional in character and that their correctness is determinable only by an examination of the whole of the record in the West Virginia proceeding. To the extent, therefore, that the majority opinion is based upon them, I think it must be said to accept rather than to review them, and in consequence to beg the question which would have been presented under a plea of res judicata, to wit, whether or not Mrs. Keesee's rights were adjudicated in the West Virginia suit.

I am unable to agree with the view of the majority that the propositions made in the opinion of the trial judge have, by implication, been conceded by the appellant in the statement in its brief that H. B. Keesee "did not prove all that he might have proved concerning the damages and the beneficiaries who were to share the verdict of the jury." I set forth in the margin the whole of the passage in appellant's brief from which the quotation is taken.[2] I think the passage is an argument not a stipulation. But even if it were the latter, I think it could not bind this court to the acceptance of mere conclusions, the correctness of which a reviewing tribunal can pass on, in the proper exercise of its function, only by comparing them with the data from which they, if correct, must properly have been drawn, to wit, the record in the West Virginia proceeding.

If the judgment in the West Virginia case had been larger, and the widow were contending that her rights were adjudicated there, and that she was therefore entitled to share in the proceeds of the judgment there, I think a court would be quite unjustified in concluding on this record and without an examination of the record itself in the West Virginia proceeding that her rights were not there adjudicated and that she was not entitled to share in the proceeds. I think the majority is equally unjustified in saying on the instant record that Mrs. Keesee's rights were not determined in the West Virginia action.

I am aware that the denial of a motion for a new trial is not subject to reversal on review except where the exercise of discretion has passed beyond lawful limits. But if what I have said in respect of the absence of proper data for determination of the plea of res judicata is correct, I think it necessarily follows that the denial of the motion did pass proper limits. Timely application was made for the entry of a plea of res judicata by virtue of the judgment of a court of a sister state, and a showing was made that the foreign action was for the wrongful death of the appellee's deceased husband and that the appellant herein was the defendant therein, and that the plaintiff therein, like the appellee here, sued as administrator of the deceased under a wrongful death statute which made a widow a beneficiary. This prima facie showing was in my view sufficient to give the appellant a right to a new trial wherein it would have opportunity to plead and prove res judicata.

---

[1] This statement in the majority opinion to the effect that H. B. Keesee did not sue as trustee for Mrs. Keesee is based upon statements in the opinion of the trial judge to the effect that: H. B. Keesee sued in West Virginia "without mentioning in the declaration that there was a surviving widow"; the "trial proceeded along a course which utterly ignored her rights and interest as much so as if she had been proven dead"; the elements of damage peculiar to a wife "were not made an issue in the case by the pleadings, the evidence or otherwise"; "the potential right of Mrs. Keesee as sole beneficiary was never put in issue."

[2] "The Supreme Court of Appeals of West Virginia having acted and the Circuit Court in West Virginia having entered judgment in accordance with its mandate, and said judgment having been paid before the judgment in the case here, justice required that a new trial should have been granted in order to give the defendant an opportunity to file a plea of res judicata. To hold otherwise is to permit the collateral impeachment of the decree of the County Court in West Virginia which issued the Letters of Administration to H. B. Keesee, to penalize this defendant for his misrepresentations in securing said letters, and to punish it because he did not prove all that he might have proved concerning the damages and the beneficiaries who were to share the verdict of the jury."