Freida Gust **SAVARD** et al., Plaintiffs-Appellants,

v.

**MARINE CONTRACTING INC.** and **Perini Corporation,** Defendants-Appellees.

No. 18, Docket 71–1819.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1972.

Decided Dec. 26, 1972.

See, also, D.C., 296 F.Supp. 1171.

538

Ridgway M. Hall, Jr. and Morgan P. Ames, Stamford, Conn. (Cummings & Lockwood, Stamford, Conn.), for appellants.

William L. Hadden, New Haven, Conn. (Pouzzner & Hadden, New Haven, Conn., Clarence A. Hadden and David C. Hadden, New Haven, Conn., of counsel), for appellee Perini Corp.

Before SMITH, KAUFMAN and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Plaintiff-appellant appeals from a judgment for defendant entered after a jury trial in the United States District Court for the District of Connecticut, J. Edward Lumbard, Judge, in an action for the wrongful death of her husband Robert Savard, a diver in the employ of Marine Contracting, Inc.[1] Federal jurisdiction is based on the Jones Act and general maritime law of the United States. The jury returned with its verdict special interrogatories which indicated that it had found the deceased to be a seaman under the Jones Act, but not an employee of Perini, Inc., the defendant-appellee; it also found the diving barge to be seaworthy.

Plaintiff's appeal is based on a number of alleged prejudicial errors in the court's charge to the jury, the court's exclusion of expert testimony as to what role Savard's helmet played in his death, and on the claim that the jury's finding of seaworthiness is incorrect as a matter of law. We find no error and affirm the judgment.

Robert Savard had been hired by Marine Contracting, Inc. as a diver to work on a steel substructure, being built by appellee, for a bridge in Narragansett Bay.

Perini was the bareboat charterer of the barge, Choctaw, from which the diving operation was conducted. Both Perini and Marine employees worked on the barge.

The job was a hazardous one; the current ran 4–5 knots, the water was quite dark and the maze of steel pilings presented a serious threat of tangled lines. Divers descended through a tubular caisson about 30–36″ in width. The caisson, constructed and attached to the barge by Perini employees, had two exits, but no platform for a standby diver at the bottom. Savard had to go about forty feet from the caisson to reach the steel piling.

Marine provided light gear—Desco masks. Some divers used their own masks. Savard at the time of the accident was using a heavy helmet borrowed from another diver, Becksted, which Savard had used several times before this job. On this helmet, unlike the greater number of diving helmets, the air intake valve was on the left and exhaust valve was on the right. To open the valves one had to turn them in the reverse of the usual direction. The helmet also had a demand air system, independent of the air intake valve.

At the time of the accident Laskey was the foreman on duty. He had been

---

1. Defendant Marine Contracting was a co-defendant-appellee but settled with plaintiff pending the appeal and is no longer a party.

on the job for fifteen hours but felt no more tired than usual. Savard dived alone. As usual a standby diver was topside. Of two diving rigs, only one was hooked up.

Thirteen minutes after he had descended, Savard telephoned that he was getting no air. Tender Pirog started to pull him up, but after pulling in some slack could not raise him. Savard's line had tangled on the ground cable of the welder torch. Pirog became excited and had to be replaced.

Meanwhile another crew member descended, wearing a Desco mask which the foreman knew to lack a telephone. He returned almost immediately because the mask had caught on something and had flooded out.

A second diver, Stallings, was sent down with the same Desco rigging. He reached Savard, who was still and whose eyes were closed. Opening the air intake valve which he found to be closed, Stallings got Savard to the caisson. Having difficulty getting Savard into the tube, he pulled three times on his line to signal pull up and take slack. In commercial hand signals three pulls means pull up, and the tenders yanked Stallings to the surface causing him to lose hold of Savard, who was dead when finally brought to the surface several hours later.

Neither Pirog nor the first rescue diver were called to testify.

■ Appellant contends the court erred in its refusal to instruct that assumption of the risk was not a defense applicable in this case. The court refused the instruction on the grounds that there was nothing presented the jury which would lead it to believe it was; and that other instructions would make it clear that the jury would not have to make such a consideration. Although Perini did plead assumption of the risk, it did not present the issue to the jury, nor is there any indication that the pleadings were given to the jury as appellant alleges and appellee denies. In summation defendants' attorneys argued that the natural hazards of the work could alone account for the accident without any negligence. Such a line of argument is proper.[2] None of the interrogatories suggested a defense of assumption of the risk; the court's instruction was clear and definite that the jury, if it found Perini was Savard's employer and was negligent, or the ship unseaworthy, must find for the plaintiff. To have instructed on the inapplicability of assumption of the risk would have introduced the issue for the first time and would have unnecessarily confused the jury.

Appellant next claims that the trial court failed to instruct the jury adequately on the legal issues of employment for Jones Act purposes, including the rules of agency and sub-agency and the loaned servant doctrine and erred in not giving appellant's requested instruction.

■ Plaintiff's request to charge included an instruction that the shipowner may not seal himself from Jones Act liability through a series of subcontracts. The evidence presented does not suggest any such scheme as to warrant the instruction.

■ Plaintiff also requested that the jury be charged that Savard was a loaned servant. The requested instruction was defective. It did not include any explanation or application of the doctrine to the case. A requested instruction must be complete and fully correct. See Evans v. S.J. Groves & Sons Co., 315 F.2d 335, 346 (2d Cir. 1963); Martin v. United Fruit Co., 272 F.2d 347, 349 (2d Cir.1959). The failure to give the requested instruction was not error.

2. While seamen do not assume the risk of their employer's negligence they are deemed to realize and accept or assume the risk of the natural hazards of their occupation. See Rush v. Cargo Ships and Tankers, Inc., 360 F.2d 766, 769 (2d Cir. 1966).

■ The court instructed the jury that while Marine was the immediate employer of Savard, Perini could be found to be the diver's employer for the purposes of the Jones Act. Such determination depends on the control Perini exercised over the diving project and daily operations of the divers. The court focused the jury's attention on the evidence concerning control—including the presence of Perini personnel on the barge, Perini's role and direction of certain operations and Perini's paying, through Marine, the divers' wages. The jury was charged to ". . . determine whether Perini's control of the entire operation was sufficient to make Marine simply its agent and Marine's employee and thereby its subagent or employee or whether Marine was an independent contractor whose employees were sufficiently free from Perini's control that they should not be considered employees of Perini's as well." The instruction was sufficient.

■ Appellant also requested that the court charge that a seaman may have more than one employer for Jones Act purposes. As stated, this proposed instruction too is inaccurate. The Supreme Court in Cosmopolitan Shipping Co. v. McAllister had "no doubt that, under the Jones Act only one person, firm or corporation can be sued as employer." 337 U.S. 783, 791, 69 S.Ct. 1317, 1322, 93 L.Ed. 1692 (1949). Appellant cites Van Camp Seafood Co. v. Nordyke, 140 F.2d 902 (9th Cir.), cert. denied, 322 U.S. 760, 64 S.Ct. 1278, 88 L.Ed. 1587 (1944) to support her request. The case does not support her contention. In that case, the court found that the master of the ship was a co-owner and therefore a co-employer. Nor does the case of Pennsylvania R.R. v. Barlion, 172 F.2d 710 (6th Cir.1949), relied on by appellant, stand for a two employers rule. There the court specifically stated and determined the issue as whether appellee was an employee of the railroad company *or* an independent contractor.

While a man may be an employee of one person, under the Jones Act he may be deemed the subagent of his employer (Marine) who hired him as agent for Marine's employer (Perini). This is precisely the substance of Judge Lumbard's charge. He instructed that the jury could find that under the Jones Act Perini was Savard's employer if it had sufficient control of the operation.

■ Appellant alleges as error the trial court's instruction and interrogatories using the term that the defendant could be found *guilty* of negligence. Judge Lumbard instructed fully on the fair preponderance standard of proof. Use of the term *guilty* in the context here is neither unusual nor confusing. Pattern jury instructions use the form *guilty* of negligence. N.Y. PJI 1:76. The plaintiff herself used the phrase in her requested instruction. The claim of error is frivolous.

■ Appellant claims that the court's refusal to charge that the failure to call Pirog, the tender, Haraskin, the first rescue diver, and certain other employees could raise an inference of unfavorable testimony was error. Judge Lumbard did give a general instruction on the inference, but did not name the people as requested. This was not error.

■ Nor was the court in error for failure to instruct that failure to submit documents, namely records of Marine's request for more divers, would also give rise to an unfavorable inference. "Where relevant evidence is within the control of the party to whose interest it would naturally be to produce it and he fails so to do, without satisfactory explanation, and produces no evidence or weaker evidence, an inference is justifiable that it would be unfavorable to him." Mid Continent Petroleum Corp. v. Keen, 157 F.2d 310, 315 (8th Cir. 1946). Perini denied that the conversations ever took place. Marine testified to the conversations, and explained its failure to produce a record of the conversation. It claimed that it was probably re-

corded on a scrap of paper and lost or thrown away. No inference can be drawn from failure to produce evidence not within the party's control.

■ Appellant also claims that the court refused to charge as requested on seaworthiness, "or even substantially as requested," and as a result, the jury was inadequately instructed on the high standards incumbent upon a shipowner. The claim is without foundation.[3] The only requests not covered by the court's instructions were those which requested the court to instruct specifically that failure to station an underwater diver, and failure to provide Savard with a helmet so he had to borrow one could be unseaworthiness and to make specific reference to air supply hoses as gear. Appellant argues that without such references the jury could not know what was included in tools, gear, appurtenances. Appellant underestimates the jury's intelligence.

Appellant claims that the jury might have thought that the defect in the equipment was not unseaworthiness unless it was so aggravated as to affect the whole vessel. The charge specifically said that the shipowner was liable for *any* unsafe part of the vessel and appurtenances, for *any* defective gear used in the diving or for missing gear.

■ Appellant further contends that error was made by the court's refusal to charge on *res ipsa loquitur*. Before any defendant is called on to explain how an injury was received there must be facts proved affirmatively showing a surrounding situation which in the ordinary course would not permit or produce injury, and also that something under defendant's control did inflict the injury complained of. Smith v. Pennsylvania R.R., 239 F. 103, 104 (2d Cir. 1917).

■ Significant only for the purpose of the Jones Act claim, the doctrine is inapplicable because (a) the cause of injury is unspecified, (b) and thus it cannot be said that the instrumentality was in the exclusive control of the defendant, (c) nor has appellant shown

---

3. A comparison of some of the requested instructions outlined in appellant's brief and those given by the court clearly demonstrates the lack of merit in this claim.
(1) Requested
If any part of a vessel, including appurtenances brought aboard by others to aid in the ship's work, are unsafe or inadequate, the ship is unseaworthy.
Charged
The ship's owner has a non delegable responsibility and duty and is liable for any part of the vessel and appurtenances *brought aboard by others to aid the* ship's work if these turn out to be unsafe or inadequate for the purposes intended and result in injury. . . .
(2) Requested
That unseaworthiness may include
(a) too few men to perform a task
(b) improper manning
(c) incompetent or unqualified personnel
(d) an unsafe method of using otherwise safe gear
(e) insufficient lighting
(f) improperly rigged or secured gear
(g) missing gear
(h) any failure in the equipment and appurtenances
Charged

A vessel may be unseaworthy merely from the fact
(a) that an insufficient number of men were *assigned to a certain task*. . . .
Jury could find that the vessel was unseaworthy if
(b) . . . the barge was improperly manned
(c) see (b)
(d) . . . an unsafe method of using otherwise safe gear was adopted
(e) there was insufficient lighting
(f) any of the gear used in the diving operation was *defective or improperly* rigged
(g) certain gear was absent or missing or was not properly secured
(h) see (f)
(3) Requested
Perini is liable . . . even if didn't have an opportunity to inspect equipment brought aboard by others
Charged
. . . even if you find it was Marine or others who may have brought aboard gear and appliances which you find defective or otherwise unseaworthy, you may still hold Perini liable . . . [e]ven if you find that Perini had no opportunity to inspect the equipment.

that Savard himself did not cause or contribute to his own death. Manhat v. United States, 220 F.2d 143, 145–146 (2d Cir.), cert. denied, 349 U.S. 966, 75 S.Ct. 900, 99 L.Ed. 1288 (1955).

■ Appellant claims as error exclusion of diver Becksted's answer to the question "Do you have any opinion with reasonable probability as to what part if any, the fact that one thread was left hand and one thread was right hand played in (Savard's) death . . . ?"

The court excluded the answer as sheer speculation. It might have been better to allow the answer, but if the ruling was error it was harmless in view of the other testimony on the subject. Becksted had already testified that the helmet was not safe for a diver not familiar with it because of its reverse valve positioning and that a diver first jumping with it after using another type right before might turn the controls the wrong way. Others had also so testified.

■ Appellant asks this court to find Choctaw, the barge, unseaworthy as a matter of law, and to reverse and remand for a trial for damages. Seaworthiness is generally a question of fact to be determined by the jury; an appellate court has the power, however, to review undisputed facts, and upon these undisputed facts, to determine the issue of seaworthiness. Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 815 (2d Cir. 1970); Mills v. Mitsubishi Shipping Co., 358 F.2d 609 (5th Cir. 1966). Rarely, however, is seaworthiness determined as a question of law. See Norris, Maritime Personal Injuries, p. 98. In both *Oliveras* and in *Mills* a specific device failed; in *Oliveras*—a door fastening failed to hold a door open and allowed the door to slam on the seaman; in *Mills* a lever jerked back and forth after power had been turned off because of a proven defective winch, thus causing injury to the claimant. In neither case was the defect disputed, its relationship to the injury doubted, nor was any evidence produced of unusual circumstances which would justify the device's nonfunctioning.

■ Appellee claims that this court cannot reach the question of unseaworthiness because appellant failed to comply with Rule 10(b) of the Federal Rules of Appellate Procedure which requires that if appellant intends to urge that a finding or conclusion is unsupported by the weight of the evidence he shall include in the record the transcript of all evidence relevant to such finding or conclusion and, unless the entire transcript is to be included, file and serve on appellee a description of parts of the transcript and statement of the issues he intends to present. Appellee claims that as neither the whole transcript was recorded nor the issue of substantial evidence noticed the court cannot reach this question. Although Watson v. Button, 235 F.2d 235, 237 (9th Cir. 1956) does find such a lack of power, we think the better rule is that of Atlantic Greyhound Lines v. Keesee, 72 App.D.C. 45, 111 F.2d 657, 659 (1940). No mandatory dismissal is required by the rule. The provision in former Rule 73(a) of the Federal Rules of Civil Procedure, now in Rule 3(a) of the Federal Rules of Appellate Procedure, that failure to take any step beyond filing the appeal is ground for such action as is deemed appropriate, applies to Rule 10(b). See 9 Moore's Federal Practice ¶203.12. See *also*, Jensen v. United States, 326 F.2d 891, 892 n. 2 (9th Cir. 1964). We therefore reach the question of unseaworthiness on the record before us.

Appellant's brief does not specify precisely what defect establishes the Choctaw's unseaworthiness, but merely claims that "there was unseaworthiness on the vessel, its gear, appurtenances, appliances, and methods." Reviewing the facts, there are relatively few concerning the issue of unseaworthiness that are not disputed.

■ There was testimony that a diving bell would have been safer, but this is not the appropriate test of seaworthiness.

Evidence that the standby diver, Haraskin, was incompetent was based on opinion and contrary opinion evidence was received.

Evidence that the Desco mask was unsafe at deeper depths was based on opinion and there was evidence of frequent successful use.

Evidence was presented that Becksted's helmet had a carbon dioxide buildup tendency, that the common positioning of air valves was reversed, and the valve was a little sticky. Other evidence showed that this model was not unusual, that the deceased had used it several times previously, and that Becksted's helmet had itself been used with no problem after the accident.

Testimony that the air hose looked like the type that would kink was met with testimony that the line had not in fact kinked.

Some divers testified that they left the job thinking that it was unsafe because of the use of a caisson rather than a diving bell or without a second standby diver underwater. Other evidence was received that such jobs customarily did not use the standby diver method.

Appellant tried to develop the theory that the caisson was structurally unsafe both in its being only thirty inches wide and its having an unfinished edge where the divers exited. Opposing evidence was presented to show that the caisson had been tested to fit two men and that there was a smooth, covered edge.

There was evidence of a misunderstanding of hand signals, but there was also evidence of individual instruction and a commonly accepted system.

Testimony was given that there was a lack of a phone in the Desco mask when the first rescue diver went down, and its nonfunctioning when the second diver went down. There was also evidence that the foreman knew of the telephone's absence in the first rescue dive, but could not have another mask used because it was not rigged. This is the only undisputed evidence of a failure of equipment.

There was evidence both that Marine had asked for more divers and that Perini had not discussed standby divers with Marine. There was also testimony that there were enough men to station standby divers underwater and that they were deemed unnecessary.

Appellant also presented evidence that Savard's line tender was incompetent and that not enough care had been taken in hiring him. Evidence showed that the young man was replaced because he became excited by the accident and could not help anymore; there is no evidence moreover that this had any result other than causing his replacement. Nor was it shown that this man as a matter of law was not equal in disposition and seamanship to the ordinary man in the calling. Jones v. Lykes Bros. S. S. Co., 204 F.2d 815 (2d Cir.), cert. denied, 346 U. S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953).

Thus, the only undisputed factual defect was in the telephone equipment of the masks used by the relief divers. This may establish unseaworthiness as a matter of law, but the jury could well have found that the defect did not contribute to Savard's death, since the first rescue dive aborted before any chance to use the phone, and the evidence would support a finding that Savard had expired before Stallings reached him on the second rescue dive, both because of the evidence of the length of time already consumed, probable survival time, and Stallings' observations of Savard's condition when reached.

■ We therefore hold that even though the lack of telephone equipment in the relief diver's mask might make it unfit for its purpose and the vessel unseaworthy, no causal connection was established as a matter of law between the defect and the unfortunate death of Savard.

We have considered appellant's other claims and find no reversible error.

Judgment affirmed.