UNITED STATES v. INTERNATIONAL MERCANTILE MARINE.

(District Court, S. D. New York. January 2, 1915.)

ALIENS ☞54½, New, vol. 12 Key-No. Series—SEAMEN—HEAD TAX—"BONA FIDE SEAMEN."

Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (Comp. St. 1913, § 4242), imposes a tax of $4 for every alien entering the United States, and Immigration Rule 1, subd. 3, declares that the head tax shall not be levied in respect to aliens who are bona fide seamen and who land in the United States pursuant to their calling. *Held* that, where alien seamen signed a ship's articles for a voyage from Southampton to New York, and all but two signed on the New York's articles for the return voyage, and it was stipulated that the two who did not return were at that time, and for a long time prior thereto had been, and still were, seamen working in the pursuit of their calling, they were "bona fide seamen," and their entry did not subject the steamship company to liability for the head tax because of their entry.

Action by the United States of America against International Mercantile Marine. Verdict for defendant.

H. Snowden Marshall, U. S. Atty., and John E. Walker, Asst. U. S. Atty., both of New York City.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher and Ray Rood Allen, both of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This action is brought to recover a head tax of $4 per man, alleged to be due on 13 alien seamen who arrived at New York on August 10, 1913, on the defendant's steamer New York. These seamen were signed on the ship's articles at Southampton for the voyage to New York to take the place of seamen who had deserted or become incapacitated on the voyage over. Eleven

of the 13 signed on the New York's articles for the return voyage. It does not appear what became of the remaining 2 sailors. The government concedes that the seamen were all bona fide seamen in the ordinary pursuit of their calling. The seamen were all landed and signed off the articles.

The statute under which the action arises is the act of February 20, 1907, as amended by the acts of March 26, 1910, and March 4, 1913, and reads thus:

"That there shall be levied, collected, and paid a tax of four dollars for every alien entering the United States."

The Supreme Court held in the case of Taylor v. United States, 207 U..S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130, where sailors signed articles for New York and return and deserted, that a section of the Immigration Act, similar to the one under consideration—

"does not apply to sailors carried to an American port with a bona fide intent to take them out again when the ship goes on, when not only there was no ground for supposing that they were making the voyage a pretext to get here, desert, and get in, but there is no evidence that they were doing so in fact."

Following this case, the Circuit Court of Appeals for this circuit held in the case of United States v. International Mercantile Marine, 171 Fed. 841, 96 C. C. A. 420, that a head tax was not due upon a sailor who signed articles for the round trip and deserted on reaching New York.

In the case of U. S. v. Atlantic Transport Co., 188 Fed. 42, 110 C. C. A. 420, a demurrer was overruled to a complaint in an action to recover a head tax on horsemen who were held to be pro hac vice sailors. They signed for the voyage to the United States, but not for the return voyage. Upon arrival they were duly discharged by the captain, and entered the United States with his knowledge and consent, and did not return to the ship. Under these circumstances, the Circuit Court of Appeals said:

"There being no question here of any desertion, but a conceded intention of all parties that on arrival he should leave the ship permanently and enter the United States, the case is not within the exception declared by the Supreme Court."

It is to be noticed that this case related to a class of men who could pursue their calling of caring for horses as well on land as upon sea. There was, therefore, at most but a slight presumption that they would continue their seafaring life, which the court might well feel was rebutted by the bare allegation that they had entered the United States. Even this presumption, Judge Ward, who dissented in the case, thought dispensed with evidence that these seamen continued in their calling.

The Immigration Department has promulgated a rule which, at least so far as public policy is concerned, is entitled to the greatest weight as a construction of the act. Rule 1, subdivision 3, provides that:

"The head tax shall not be levied in respect to the following classes of aliens: * * *

"(J) Bona fide seamen who land in the United States pursuant to their calling."

While I cannot think that the mere presumption that a sailor would be likely immediately to continue his occupation as such is sufficient to meet the requirements of the rule laid down in Taylor v. United States, supra, if the steamship company lands a seaman, and neither has a contract to take him back, actually takes him back, nor can account for him at all, the stipulation in this case that all the sailors, including the 2 who did not return to the ship, "were at that time, and for a long time prior thereto had been, and still are seamen working in the pursuit of said calling," seems to me sufficient to bring the facts within the rule of that case.

The question always is whether the sailor has entered the country in any real sense, or has merely used it as a point from which to embark on the next available ship. The courts have proceeded so far as to hold that a sailor who signs shipping articles for a round trip in which he temporarily enters a port of the United States does not "enter" within the meaning of the act. But after all such shipping articles are nothing but evidence of intention to continue in his seafaring life, which can be equally furnished in other ways, one of which is a continuance by the sailor of his calling subsequent to landing. I think the return of the 11 sailors to England by the same ship on which they came brings them within the rule laid down by the Supreme Court in Taylor v. United States, supra, and the stipulation that the other 2 "still are seamen working in the pursuit of said calling" brings them within the same rule. Were it not for this stipulation, which I did not have in mind at the trial, I should be inclined to hold that a head tax was due upon these 2 seamen, because I do not think that the presumption that a sailor continues in his calling is sufficient to relieve the master, who has landed and discharged him, from proving the fact of such continuance.

The decision in the case of United States v. Atlantic Transport Co., supra, does not apply to the facts in the case at bar, for the reason, which I have already stated, that there was no evidence before the court in that case that the seamen on entering port continued in their calling.

Both sides having moved for the direction of a verdict, I am, for the foregoing reasons, of the opinion that a general verdict should be directed for the defendant.