Otto SCHIEMANN, Plaintiff-Appellant,

v.

GRACE LINE, INC., Defendant-Appellee.

No. 253, Docket 25233.

United States Court of Appeals
Second Circuit.

Argued April 14, 1959.

Decided Aug. 18, 1959.

Clark, Chief Judge, dissented.

Harry Ruderman, New York City, for plaintiff-appellant.

John L. Quinlan, New York City (John B. Shields, New York City, Bigham, Englar, Jones & Houston, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and SWAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Plaintiff appeals from a judgment in favor of defendant Grace Line (Grace) dismissing the complaint entered upon a directed verdict in its favor. The action against defendant Interstate Company (Interstate) was dismissed with prejudice and no appeal has been taken therefrom.

The principle of law applicable to a correct resolution of the sole question presented on appeal has recently been stated by the Supreme Court in Baker v. Texas & Pacific Railway Co., 1959, 359 U.S. 227, at page 228, 79 S.Ct. 664, at page 665, 3 L.Ed.2d 756, in which the court said with respect to the factual conclusion of employee status: "Only if rea-

sonable men could not reach differing conclusions on the issue may the question be taken from the jury." The trial court came to such a conclusion. *Quaere*, whether the undisputed evidence warrants this result?

Plaintiff, a barber and store salesman, was employed for these purposes by Interstate under a written contract. Interstate, also by contract, had concession rights from Grace to operate a barber shop and ship's store aboard Grace Line's S.S. Santa Maria.

The agreement between Interstate and Grace (Exhibit D) in substance provided that Grace would furnish a barber shop and store; that Interstate would hire a barber who should also be responsible for the store; that Interstate would pay Grace 10% of the gross receipts from the barber shop and store; that Interstate would indemnify Grace against claims arising out of injury to the barber even though due to the negligence of Grace; that "The barber shall be considered the agent or employee of the Company [Interstate]"; and that the barber would be required to sign ship's articles "at a nominal rate of one cent (1¢) per month so as to be subject to the Owner's [Grace's] rules, regulations and discipline."

As of November 19, 1954 plaintiff filled out an application for employment by Interstate in which he agreed to accept the provisions of the Workmen's Compensation Act in force where the employment contract was made and he also signed an "Accident Release" (Exhibit C). In this release plaintiff recognized that Interstate might be obligated to indemnify the steamship company (Grace) with which it had a contract for any injury sustained by Interstate's employees while engaged in performing such services. As part of the consideration for his employment plaintiff agreed to assume all risks of injuries resulting from any negligence of the steamship company, to execute a release in the event of injury and ratified ("as fully as if I were a party thereto") Interstate's agreement with the steamship

company to the effect that Interstate's employees should not have any cause of action for injury sustained in the course of their employment on any boat of such company.

In its answer Grace pleaded as defenses that plaintiff could not maintain the action against it and that he had executed and delivered to Interstate a written release for the benefit of Grace. The principal issue thus framed, developed in colloquy between the parties' counsel, was stated as whether "this man at the time he was aboard the vessel was not an employee of Grace Line and not entitled to sue Grace Line under The Jones Act, but was an employee of Interstate." The validity of the release was "to be decided by this Court independently of any further question and upon a stipulated record to be made herewith." To the court's inquiry to counsel as to whether this analysis of the issues and procedure was correct both replied "correct." The trial then proceeded on the issue of whether plaintiff was an employee of Grace. The proof submitted by plaintiff was in substance that he was employed by Interstate, paid by Interstate and did not have to answer to Grace as to his coming from and going to the ship for what he would do and where he would go. The facts not being in dispute, the court directed a verdict in favor of Grace, saying that this was one of the few cases in which there was a situation where "there is no question of fact to submit to the jury * * *".

Were there any disputed questions of fact the jury is obviously the unit in our judicial system to resolve them. Not only has this been stated in the Baker case, supra, but also by the Third Circuit in Byrne, Admx. v. Pennsylvania R. Co., 3 Cir., 1959, 262 F.2d 906. There the court said (at page 912): "the test of who has the 'right to control' the activities of the workman is the generally accepted criterion determining employment status." The trial court there had posed the issue as "The ultimate question is who could control the manner of the employees doing the work; who

had the right to control, not who actually did" (at page 913).

Plaintiff left no fact issue unresolved for a jury. He had knowingly signed documents attesting to his status as an Interstate employee. He did not introduce any proof that his work on board ship was controlled, supervised or directed in any way by Grace. The "right to control" both his barber shop work and ship's store duties was vested in plaintiff and Interstate; not in Grace. Even as to his on and off shore privileges plaintiff testified that he was not required "To answer to anybody what I would do and where I would go." To have sent any issue, purportedly as an issue of fact, to the jury under these circumstances would have been contrary to the doctrine thus announced by both the Supreme Court and a Court of Appeals.

This type of contract is not new. For many years it has had its counterpart in land transportation. On the railroad systems of the country many employees of companies other than the railroads on which they work travel in the course of their employment. Thus by employment contract employees of the United States Express Company (Baltimore & Ohio Southwestern Railway Co. v. Voigt, 1900, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560); Wells Fargo (Wells Fargo & Co. v. Taylor, 1919, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205); and The Pullman Company (Robinson v. Baltimore & Ohio Railroad Co., 1915, 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849), all performed services on railroads although under employment contracts with employers which in turn had their own contracts with the railroads. In the Robinson case, supra, upholding a release for the benefit of the railroad in his agreement with his employer The Pullman Company, the Supreme Court said (237 U.S. at pages 92–93, 35 S.Ct. at page 493):

> "The inquiry rather is whether the plaintiff comes within the statutory description; that is, whether upon the facts disclosed in the record, it can be said that within the sense of the act the plaintiff was an employe of the railroad company, or whether he is not to be regarded as outside that description, being, in truth, on the train simply in the character of a servant of another master by whom he was hired, directed, and paid, and at whose will he was to be continued in service or discharged. * * * We think it to be clear that in employing its servants the Pullman Company did not act as the agent of the railroad company. The service provided by the Pullman Company was, it is true, subject to the exigencies of railroad transportation, and the railroad company had the control essential to the performance of its functions as a common carrier. To this end the employes of the Pullman Company were bound by the rules and regulations of the railroad company. This authority of the latter was commensurate with its duty, and existed only that it might perform its paramount obligation."

Answering the argument that signing the ship's articles made plaintiff an employee of Grace, the above statement of the Supreme Court that the employees of the Pullman Company were bound by the rules and regulations of the Railroad Company is pertinent.

The opinions of the Supreme Court in both Wells Fargo, supra, and Voigt, supra, leave no doubt that the relationship between plaintiff and Grace did not bring plaintiff within the category of a Grace employee. Questions of fact to be resolved should be sent to the jury. Even where inferences are to be drawn from certain facts these too are said to be for jury determination. The contrary is true as the courts point out where reasonable men could not differ. The conclusion of the trial court was within this class and therefore is entitled to be affirmed.

The argument of *res adjudicata* because of the maintenance suit in the New York Municipal Court is not applicable here. Grace in that suit denied employment. The amount of mainte-

nance was litigated there and by stipulation. The issue here was not litigated or determined in that action.

Judgment affirmed.

CLARK, Chief Judge (dissenting).

My brothers concede that the ultimate question in regard to plaintiff's employment status is who could control his work activities—"who had the right to control, not who actually did." Byrne, Adm'x v. Pennsylvania R. Co., 3 Cir., 262 F.2d 906, 913, certiorari denied Pennsylvania R. Co. v. Byrne, Adm'x, 359 U.S. 960, 79 S.Ct. 798, 3 L.Ed.2d 766. On this issue—an oft-recurring one in Jones Act and FELA litigation—it is well settled that the jury's power of decision is a broad one akin to its range of discretion to find negligence. Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756; Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754; Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed. 2d 737; Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed. 2d 404; cf. Magenau v. Aetna Freight Lines, 79 S.Ct. 1184; Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U. S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. I cannot agree that a reasonable man could not have found that defendant Grace Line had the requisite right of control over the plaintiff. Plaintiff's contract with The Interstate Co., Inc., provided that he would receive a nominal wage from Grace Line and would be subject to its rules, regulations, and discipline. Moreover, as contemplated by that contract, plaintiff signed the Grace Line's ship's articles as an ordinary member of the crew. This evidence is more than ample basis for submitting the issue of plaintiff's employment status to the jury.

Moreover, the decision of the court below was erroneous in yet another respect. For if plaintiff is not an employee of Grace Line, his complaint states a perfectly valid claim for damages against that company under general maritime law. As plaintiff was lawfully aboard defendant's vessel, he may recover for injuries caused by its negligence. Kermarec v. Compagnie Generale Transatlatique, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550; The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Leathers v. Blessing, 105 U.S. 626, 26 L.Ed. 1192. And as he was there to perform services necessary to the functioning of the passenger liner he would seem entitled to protection against unseaworthiness as well. See Kermarec v. Compagnie Generale Transatlantique, supra, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550; Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Plaintiff's complaint adequately pleads a claim for relief under either theory.

I do not understand the process by which my brothers conclude that the correctness of the lower court's direction of a verdict against the plaintiff on the issue of employment is the *sole* question presented on this appeal. The court did more than merely direct a verdict on a single issue; had it done only that, we would have no appellate jurisdiction to review its action at this time. Cf. Schwartz v. Eaton, 2 Cir., 264 F.2d 195. It dismissed plaintiff's complaint on the merits, thus barring the plaintiff from recovering for his injuries under any theory of law—not merely under the Jones Act. Hence the question before us is the broad one of the correctness of this dismissal. It cannot be gainsaid that the court may take such action only where the facts pleaded fail to state a claim upon which relief can be granted under any theory of law, and our review of such action is not limited to the theories of law advanced by the parties. See Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 976; Smith v. Bear, 2 Cir., 237 F.2d 79, 86, 60 A.L.R. 2d 1119; Bernstein v. United States, 10 Cir., 256 F.2d 697, 706, certiorari dismissed 358 U.S. 924, 79 S.Ct. 296, 3 L. Ed.2d 298.

It is of course to be noted that one defense raised by defendant was that of

release, based upon a releasing clause of the original agreement of November 19, 1954, the disability sued upon occurring in February 1956. Concededly the Jones Act, if applicable, makes these provisions invalid. Since the plaintiff in any event was a seaman (see Kermarec v. Compagnie Generale Transatlantique, supra, 358 U.S. 625, 629, 79 S.Ct. 406, 3 L.Ed.2d 550; Pope & Talbot v. Hawn, supra, 346 U.S. 406, 412–413, 74 S.Ct. 202, 98 L.Ed. 143; Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099), it would seem that similar principles would apply. At the very least a heavy burden must rest upon defendant to sustain the general fairness of the release in futuro. Garrett v. Moore-McCormack Co., 317 U.S. 239, 246–248, 63 S.Ct. 246, 87 L.Ed. 239; Kelcey v. Tankers Co., 2 Cir., 217 F.2d 541; Gilmore & Black, The Law of Admiralty 378, n. 388 (1957). See also 46 U.S.C. § 183(c). But final adjudication of that issue can be properly postponed until it is directly in issue, and is carefully briefed and argued.

The judgment below should be reversed.