Anna MAHRAMAS, Plaintiff-Appellant,

v.

AMERICAN EXPORT ISBRANDTSEN LINES, INC., and House of Albert, Inc,, Defendants-Appellees.

No. 228, Docket 72–1456.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1972.

Decided Feb. 22, 1973.

Charles Sovel, New York City (Abraham E. Freedman, and Ned R. Phillips, New York City, on the brief), for plaintiff-appellant.

Joseph T. Stearns, New York City (Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant-appellee, American Export Isbrandtsen Lines, Inc.

William F. McNulty, New York City (Hanner, Onorato & Hogarty and Anthony J. McNulty, New York City, on the brief), for defendant-appellee House of Albert, Inc.

Before KAUFMAN, ANDERSON and OAKES, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

On December 6, 1966 the defendant American Export Isbrandtsen Lines, Inc., (Export) and the defendant House of Albert, a partnership, entered into a contract under the terms of which the defendant House of Albert was granted a concession by Export to maintain, staff and operate the barber and beauty shops on Export's three large passenger liners. During the life of the contract, one of them, the S.S. INDEPENDENCE, made a voyage to the Mediterranean and back between February 28, 1967 and May 4, 1967. The plaintiff, Anna Mahramas, a professional hairdresser, was at that time employed by House of Albert, and she was assigned to work in the beauty shop on the S.S. INDEPENDENCE on the Mediterranean cruise. While so employed on the vessel, the plaintiff was required to have seaman's papers and sign ship's articles, but she was hired and paid solely by House of Albert as called for by the contract, and took orders only from House of Albert's supervisor on the ship. There was an informal understanding that Export, as the shipowner, would furnish the plaintiff and other employees of House of Albert who were on the ship, subsistence and quarters.

The plaintiff shared a cabin with another beauty shop employee, and used the upper of the two berths in the cabin, to which access was gained by a ladder. It is the plaintiff's claim that on March 11, 1967, as she started up the ladder to her upper berth, the bottom step gave way; as a result she struck her face against the side of the ladder and fell to the floor of the cabin, straining her lower back.

She brought this action on November 21, 1967 under the Jones Act [1] and under the general maritime law of unseaworthiness, maintenance and cure, and negligence for damages arising out of her shipboard injury. Because of the Jones Act allegations, a jury was impaneled which heard the entire case, but when, at the conclusion of the evidence the trial court dismissed the Jones Act claims, it also discharged the jury and, as there was no diversity of citizenship, decided the remaining admiralty issues itself.

1. The Jones Act, 46 U.S.C. § 688, in pertinent part, reads as follows:
"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . . "

The plaintiff testified that, following the accident, she told her roommate, whose name was Rabar, about the broken ladder and that Rabar said she would get the repair man to fix it for her. The plaintiff did not report the accident or the broken ladder to any of the officers or crew, but said she told everyone in the beauty shop. Sixteen days later she sought medical attention at the dispensary and the surgeon noted she had capped teeth and diagnosed her trouble as neuralgia and prescribed penicillin. She said she told the surgeon she had suffered an accident, but no such thing was recorded by the surgeon. On April 5, 1967 and again on April 30, 1967, the pain in her jaw was diagnosed as diseased roots of her teeth and she was given penicillin; the surgeon's log, however, makes no reference to an accident or back pains.

She worked every day throughout the voyage. After her return on May 4, 1967 she was treated by two dentists for an infection in her teeth. On June 9, 1967 she had outpatient treatment in the surgery clinic at the United States Public Health Service Hospital on Staten Island for diarrhea, resulting from antibiotics given her for the infected teeth. June 13, 1967, the surgery clinic found her fit for duty. Thereafter she made a last voyage for House of Albert, during August, on another ship.

She complained of back pain for the first time when she returned to the surgery clinic on September 22, 1967 but she denied having had any injury to her back. She returned there twice in the early part of October for difficulty in swallowing and for lower abdominal pain. She again went there on October 17th for abdominal pain and attended the orthopedic clinic which described her symptoms as a gradual onset of lumbosacral pain and pain in knee and fingers. It was at that time that she first made mention of what the medical record described as a "vague [history] of trauma, March 1967, when she tripped on a step aboard ship and struck her face." From then on until she commenced the action on November 21, 1967 she made several more visits to the Public Health Hospital for removal of a scar from her knee, lower abdominal pain and swallowing difficulty. On November 24, 1967 she visited the orthopedic clinic where she represented that her back pain had gone away.

The plaintiff's roommate, Rabar, testified that the plaintiff never mentioned having an accident on the ship or that there was a broken step on the ladder; and Rabar said she never asked anyone to fix the ladder.

Plaintiff, in rebuttal, offered the testimony of one Caparones, another House of Albert employee on the ship, who said the plaintiff had told him she had hurt her jaw when she fell in her stateroom because a ladder was broken. Previously, however, he had said she had not told him how the accident occurred, and he had never heard about or seen any broken step in her cabin. Outside of the plaintiff's own testimony, there was no evidence of a broken ladder step or of any accident befalling the plaintiff.

■ The court dismissed the Jones Act and maintenance and cure claims against Export because it was not the plaintiff's employer and against House of Albert because it did not own or control the ship. The court then found against the plaintiff on the unseaworthiness and general negligence claims, because she "failed to show by a fair preponderance of the evidence that the accident occurred as she has testified." [2]

We affirm the judgments of the district court, though on somewhat different legal bases from those relied on by the court below.

■ This case raises important questions concerning the proper parties

2. The appellant challenges the sufficiency of the court's findings of fact pursuant to F.R.Civ.P. 52(a), but, although the findings are brief, they fully state the basis of the court's decision and are adequate compliance with Rule 52(a), Lemelson v. Kellogg Co., 440 F.2d 986, 988 (2 Cir. 1971).

to the various admiralty causes of action in an unusual context, that is, one where a plaintiff-employee is injured aboard a ship but is not employed by the shipowner and is not covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (Compensation Act).[3]

At the outset, it should be noted that there is no question raised concerning the propriety of the plaintiff's actions against the shipowner for unseaworthiness and general negligence. The duty to provide a seaworthy ship extends not only to the owner's employees but to all "who perform the ship's service . . . with his consent or by his arrangement," Seas Shipping Co. v. Sieracki, 328 U.S. 85, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946).[4] Furthermore, under maritime law, the owner of the ship owes a duty of reasonable care "to all who are on board for purposes not inimical to [the shipowner's] legitimate interests," Kermarec v. Compagnie Generale Transatlantique, 358 U. S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959),[5] and, of course, the owner's employees cannot be held to be fellow servants of third-party employees, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L.Ed. 143 (1953), and assumption of risk is no defense in any admiralty action, The Arizona v. Anelich, 298 U.S. 110, 122–123, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); Rivera v. Farrell Lines, Inc., 474 F.2d 255, 257 (2 Cir. 1973) n.1.

The primary questions raised on this appeal, however, go to the proper parties for the purposes of the Jones Act and maintenance and cure. While the origins of those actions, their mode of trial, and the bases and measures of recovery under them are all quite different, the parties to both of these actions are the same—a plaintiff seaman against his employer. The Supreme Court has pointed out that both causes of action depend upon the same relationship between the parties, Fink v. Shepard Steamship Co., 337 U.S. 810, 815, 69 S.Ct. 1330, 93 L.Ed. 1709 (1949), and that the Jones Act, where there is negligence, supplements the remedy of maintenance and cure, O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 43, 63 S.Ct. 488, 87 L.Ed. 596 (1943). Furthermore, the employer may be liable under the Jones Act for negligent failure to provide his employees maintenance and cure, Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670, 679 (2 Cir. 1971). Therefore, in determining whether or not a person is a proper party plaintiff or defendant, the Jones Act and maintenance and cure cases may be read interchangeably, Weiss v. Central R.R., 235 F.2d 309, 311 (2 Cir. 1956); Haskins v. Point Towing Co., 421 F.2d 532, 536 (3 Cir.), cert. denied 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970); cf. Braen v. Pfeifer Oil Transportation Co., 361 U.S. 129, 132–133, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959).

3. The Compensation Act is the exclusive remedy for an employee, not a member of the crew of a vessel, against his employer when an injury occurs "upon the navigable waters of the United States," 33 U.S.C. §§ 902(4), 903(a). Because the injury in this case did not arise upon the navigable waters of the United States, the Act clearly does not apply to this plaintiff, see, Panama Agencies Co. v. Franco, 111 F.2d 263, 265 (5 Cir. 1940).

4. It should be noted, however, that effective November 26, 1972, employees covered by the Compensation Act may no longer bring an action against the shipowner for unseaworthiness, Pub.Law 92–576, § 18 (a).

5. The dissenting opinion assumes and complains that this decision deprives the plaintiff of any right to sue the shipowner for defective conditions or other negligence on board the ship and leaves her with only a right of action for the "crumb" of maintenance and cure. In saying this, however, it disregards the fact that she had the right to maintain and did maintain actions for unseaworthiness and general negligence against Export, which were decided adversely to her on the merits.

■ Although Mrs. Mahramas was not performing any of the historic functions of a ship's crew, there is no question that she was a seaman at the time of her alleged injury and is therefore a proper party plaintiff. The remedies afforded by the Jones Act and maintenance and cure are designed to protect those who perform services upon ships and are exposed to the unique hazards of work upon the sea, Aguilar v. Standard Oil Co., 318 U.S. 724, 727, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); Warner v. Goltra, 293 U.S. 155, 156, 55 S.Ct. 46, 79 L.Ed. 254 (1934), and therefore the benefits should be available to anyone so engaged, even if not in the employ of the ship itself. In Gerradin v. United Fruit Co., 60 F.2d 927 (2 Cir.), cert. denied, 287 U.S. 642, 53 S.Ct. 92, 77 L.Ed. 556 (1932), this court read the Jones Act in *pari materia* with 46 U.S. C. § 713 which provides that any person "who shall be employed or engaged to serve in any capacity on board [any vessel belonging to a United States citizen] shall be deemed and taken to be a 'seaman' . . ." *See also*, Uravic v. Jarka Co., 282 U.S. 234, 239, 51 S.Ct. 111, 75 L.Ed. 312 (1931); Gahagan Construction Corp. v. Armao, 165 F.2d 301, 305 (1 Cir.), cert. denied, 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152 (1948), cited with approval in Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955).

The courts have long given seamen status to those performing tasks not necessary to the actual navigation of the ship, Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951) (messman); United States v. Atlantic Transport Co., 188 F. 42 (2 Cir.), cert. denied 223 U.S. 724, 32 S.Ct. 525, 56 L. Ed. 631 (1911) (horsemen); The J. S. Warden, 175 F. 314 (S.D.N.Y.1910) (bartender); The Sea Lark, 14 F.2d 201 (W.D.Wash.1926) (musician), and we, therefore, adhere to the test in *Gerradin, supra*, and hold that the plaintiff, Mrs. Mahramas, was a seaman entitled to the benefits of the Jones Act and maintenance and cure because she was engaged in employment on board a ship.

■ There has never been any question that the Jones Act applies only between employees and their employers, Moragne v. States Marine Lines, Inc., 398 U.S. 375, 394, 90 S.Ct. 1772, 26 L. Ed.2d 339 (1970); Panama R.R. v. Johnson, 264 U.S. 375, 387–388, 44 S.Ct. 391, 68 L.Ed. 748 (1924); *Fitzgerald, supra*, 451 F.2d at 674, and the Supreme Court made explicit in Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 791, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949), that only one person, be it an individual or a corporation, could be sued as the employer.[6] But Mrs. Mahramas' right under the Jones Act does not extend, as she argues, to the shipowner as well. An action for maintenance and cure can also be maintained only against the employer because the right arises out of and is implied in the contract of employment, *Aguilar, supra*, 318 U.S. at 730, 63 S.Ct. 930; Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Cortes, supra*, 287 U.S. at 371, 53 S.Ct. 173; Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 914 (2 Cir. 1960).[7]

The House of Albert, although admitting that it was Mrs. Mahramas' em-

6. We do not read the dissent as disputing the need for an employer-employee relationship, but construe it as favoring the broadening of the definition of "employer".

7. It could be argued that the obligation of maintenance and cure should fall upon the ship because it is only the shipowner, through the master, who can order the vessel into port for emergency medical care in extreme circumstances; however, the ship is required to exercise reasonable care for all those legitimately on board and we see no reason why an employer, not the owner, could not seek indemnification against the owner for any maintenance and cure that he became liable for because of the owner's negligence. We question the continued validity of The Federal No. 2, 21 F.2d 313 (2 Cir. 1927), to the extent that it would prohibit such an indemnification, *see* Jones v. Waterman S.S. Corp., 155 F.2d 992, 1000 (3 Cir. 1946).

ployer, claims that she has no cause of action against it because it is not a *ship-owner*-employer. The court below took this position, and some of the cases appear to furnish support for it, *see, e. g.,* Case v. St. Paul Fire & Marine Ins. Co., 324 F.Supp. 352, 353 (E.D.La.1971), dismissed on other grounds, 456 F.2d 252 (5 Cir. 1972). It also seems to be suggested by some of the commentators, *see, e. g.,* G. Gilmore and C. Black, The Law of Admiralty, § 6–21, at 285 (1957), but this derives from the language of cases in which the shipowner was the employer and there was no necessity for saying anything about situations in which the employer of a seaman was not a shipowner. Thus many of the cases use the term "shipowner" interchangeably with the term "employer", but this is done only where the shipowner is the employer. Another difficulty, of course, is that very few seamen, relatively speaking, are in Mrs. Mahramas' position, that is, not employed by the shipowner and not covered by the Compensation Act.

■ An employer, although not a shipowner, can still become liable to his employees under the admiralty laws where he has hired them to do maritime work, *Sieracki, supra,* 328 U.S. at 99–100, 66 S.Ct. 872. The Jones Act was often applied to actions by longshoremen against their stevedoring company employers, *see, e. g.,* International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), until such employees were given their sole remedy under the Compensation Act; and maintenance and cure has been awarded to a messman hired by a catering service to work aboard another's ship, Sims v. Marine Catering Service, Inc., 217 F.Supp. 511 (D.La.1963). The reasoning, as explained in *Haverty, supra,* 272 U.S. at 52, 47 S.Ct. at 19, is that seamen should

not be deprived of their remedies simply "with the accident of their being employed by a stevedore [or other independent contractor] rather than by the ship."

■ In determining a seaman's employer, a court must look to "the plain and rational meaning of employment and employer," *Cosmopolitan Shipping, supra,* 337 U.S. at 791, 69 S.Ct. at 1321, which means that the right of control is one of the most important factors to consider, United States v. W. M. Webb, Inc., 397 U.S. 179, 192, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970); Savard v. Marine Contracting, Inc., 471 F.2d 536, 540 (2 Cir. 1972).[8] In Schiemann v. Grace Line, Inc., 269 F.2d 596 (2 Cir. 1959), this court dealt with the question of who was the employer for Jones Act purposes in a factual situation virtually paralleling this one. There a barber was hired by an independent contractor to work aboard a Grace Line ship. There, as here, the plaintiff was not only hired but also paid by the independent contractor and was to be considered his employee. In both cases, the seamen signed articles[9] but were not responsible to the shipowner for working orders nor subject to the owner's call to duty. This court held that the evidence was such that reasonable men could not differ from the conclusion that the barber was not the employee of the shipowner, and that therefore the trial court properly removed this issue from the jury.

■ In the present case as in *Schiemann, supra,* the House of Albert, an independent contractor, was clearly the employer; there was no evidence and no possibility of a reasonable inference to the contrary, and the question was properly taken from the jury and decided by the court, *see also, Fitzgerald, supra,* 451 F.2d 678–679; Bergan v. Interna-

---

8. These authorities make it crystal clear that under the Jones Act the shipowner is not always the employer of every person given seaman status aboard the vessel as the dissent claims.

9. Signing ship's articles makes a seaman subject to the rules and discipline of the ship, but this does not make him the ship's employee, *see* Hull v. Philadelphia & R. Ry., 252 U.S. 475, 479–480, 40 S.Ct. 358, 64 L.Ed. 670 (1920).

tional Freighting Corp., 254 F.2d 231, 233 (2 Cir. 1958).

■ Therefore, Mrs. Mahramas' claims under the Jones Act and for maintenance and cure were properly dismissed against the defendant Export, the shipowner, because it was not her employer, but the House of Albert was a proper party for the plaintiff to sue on these claims because it was her employer. On the merits of her Jones Act claim, however, she failed to prove any negligence on its part. The House of Albert moved for a directed verdict at the close of the plaintiff's case and, because we can perceive no theory, nor is one presented by the plaintiff, upon which the House of Albert, its agents or its employees, could have been negligent in connection with the alleged accident, the motion was properly granted by the district court as to the Jones Act claim.[10]

On the other hand, a seaman is entitled to maintenance and cure whenever he is disabled "in the service of the ship" no matter what the cause, The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903); Koslusky v. United States, 208 F.2d 957, 959 (2 Cir. 1953).

■ In the present case, however, even if it is assumed, arguendo, what she claims, that her injuries did arise in the service of the ship, the plaintiff offered no proof of loss, and therefore she cannot recover.

The duty to provide maintenance and cure is imposed "to safeguard the seaman from the danger of illness without succor," but it "does not extend beyond the seaman's need," Calmar Steamship, supra, 303 U.S. at 531, 58 S.Ct. at 654. There is no evidence whatsoever that Mrs. Mahramas spent anything for her maintenance or living expenses, but instead she testified that she lived variously with her brothers, her sisters, and her husband in locations in New York, Pennsylvania, and West Virginia and even received unemployment compensation for a period of time. As far as her medical expenses or "cure", she received most of her treatment at a public service hospital and there is no evidence that she had any out-of-pocket medical expenses. The fact that she never sought maintenance and cure until she instituted this suit, some nine months after the alleged accident, is further indication that she was not suffering illness without aid. Therefore, because there was no proof on this essential element, the plaintiff is not entitled to recover maintenance and cure; and a directed verdict was required on that point as well, Johnson v. United States, 333 U.S. 46, 50, 68 S.Ct. 391, 92 L.Ed. 468 (1948); Stankiewicz v. United Fruit Steamship Corp., 229 F.2d 580, 581 (2 Cir. 1956); Robinson v. Isbrandtsen Co., 203 F.2d 514, 516 (2 Cir. 1953); Field v. Waterman S. S. Corp., 104 F.2d 849, 851 (5 Cir. 1939).

■ The appellant also argues under the doctrine of Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), that the unseaworthiness and general negligence claims against Export should have been submitted to the jury instead of being decided by the court. Fitzgerald, supra, at 21, 83 S.Ct. 1646, however, simply held that when a Jones Act claim was given to a jury, unseaworthiness and maintenance and cure claims arising out of the same set of circumstances must also go to the jury so that one trier of fact could determine the entire claim. In this case, there was no real Jones Act claim to go to the jury, and the trial court could, as it did, properly take for itself the determination of the remaining admiralty issues. If the rule were otherwise, any plaintiff could receive a jury trial on his admiralty claims simply by alleging a Jones Act count, whether

---

10. Export provided House of Albert employees with their staterooms and retained full and exclusive control over these quarters; therefore, House of Albert could not be held negligent for permitting any defects to exist there.

or not he had any evidence to support it, and, of course, the time has still not come when one is entitled to a jury in every admiralty suit. *See*, Romero v. International Terminal Operating Co., 358 U.S. 354, 359–380, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

The judgments are affirmed.

OAKES, Circuit Judge (dissenting):

The majority has to rely heavily upon Schiemann v. Grace Line, Inc., 269 F.2d 596 (2nd Cir. 1959) (2–1 decision), to reach the result that a shipowner is not responsible to a seaman under the Jones Act if the seaman is also the employee of a ship concessionaire. I think that *Schiemann* was erroneously decided, and because it overlooked Supreme Court precedent is not binding upon us. I also think that the result reached by the majority is an unfortunate one that would pave the way for shipowners to contract out ship functions to concessionaires— for example, for providing food to passengers or crew—and thereby to avoid or minimize liability for defective conditions or other negligence on board the ship.

I start with the proposition—conceded by the majority—that a beautician on a cruise ship is a seaman, just as are cooks, mess men, muleteers, bartenders, musicians, telephone operators, laundresses, and even barbers (*Schiemann, supra*) when they are performing services that render the ship's voyage economically viable.[1] A cruise ship which tried to attract female passengers without providing hairdressing services would soon be converted to duty as a cargo vessel.

The question is, then, whether a shipowner is liable to a seaman under the Jones Act because of the latter's status *qua* seaman or whether the test of "employment" used in railroad cases decided under the FELA[2] is determinative. The majority in *Schiemann* adopted the FELA test without mentioning the seaman's status at all.[3] It did so despite Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952), which held that "Seamen were given the rights of railway employees by the Jones Act, but the definition of 'seaman' was never made dependent on the meaning of 'employee' as used in legislation applicable to railroads."[4] *Cf.* United States v. W. M. Webb, Inc., 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970) (status of captains and crews under FICA and FUTA must be determined by maritime law standards, not usual common law rules). So too Cortes v. Baltimore Insular Line, Inc.,

1. *See generally* Seas Shipping Co. v. Sieracki, 328 U.S. 85, 91, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). For specific occupations that have been held to be "seamen" in varying contexts *see, e. g.*, The Sea Lark, 14 F.2d 201 (W.D.Wash.1926) (musicians); The Baron Napier, 249 F. 126 (4th Cir. 1918) (muleteers); United States v. Atlantic Transport Co., 188 F. 42 (2nd Cir.), cert. denied, 223 U.S. 724, 32 S.Ct. 525, 56 L.Ed. 631 (1911) (horsemen); Neville v. American Barge Line Co., 105 F.Supp. 408 (W.D.Pa.1952), aff'd, 218 F.2d 190 (3rd Cir. 1954) (laundresses); Agnew v. American President Lines, 73 F.Supp. 944, 951 (N.D.Cal. 1947), rev'd in part on other grounds, 177 F.2d 107 (9th Cir.), cert. denied, 339 U.S. 951, 70 S.Ct. 838, 94 L.Ed. 1364 (1949) (barbers).

2. *Compare* Wells Fargo & Co. v. Taylor, 254 U.S. 175, 186–187, 41 S.Ct. 93, 65 L.Ed. 205 (1920), and Byrne v. Pennsylvania R. R., 262 F.2d 906 (3rd Cir.), cert. denied, 359 U.S. 960, 79 S.Ct. 798, 3 L.Ed. 2d 766 (1959), with Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 376–378, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

3. Apparently the status theory was not advanced in argument in *Schiemann* for Chief Judge Clark cast his dissent, 269 F.2d at 599, in terms of control or right to control. He argued that whether the concessionaire or shipowner had the right of control was a jury question, and while the same argument might be made here, I consider *Schiemann* binding authority against it.

4. *Desper* held, however, that a person engaged in seasonal repairs on vessels "laid up for the winter" was *not* a seaman. 342 U.S. at 190–191, 72 S.Ct. 216.

287 U.S. 367, 372, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932) (Cardozo, J.), in holding that negligent failure to extend maintenance and cure to a seaman gave rise to a cause of action under the Jones Act, says: "The duty [of maintenance and cure] . . . is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties." The Court went on to say, in language pertinent to this case: "We do not read the act for the relief of seamen as expressing the will of Congress that only the same defaults imposing liability upon carriers by rail shall impose liability upon carriers by water. The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties." 287 U.S. at 377, 53 S.Ct. at 176. In extending the duty to provide a seaworthy ship to longshoremen in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Court referred to historical "notions of status," 328 U.S. at 91, 66 S.Ct. 872, in rejecting the argument that a shipowner's duty is limited to those with whom he has a contract for work, and, id. at 97, 66 S.Ct. 872, 878, quoted approvingly the statement of the court below that:

"It seems, therefore, that when a man is performing a function essential to maritime service on board a ship the fortuitous circumstances of his employment by the shipowner or a stevedoring contractor should not determine the measure of his rights. This is the very basis on which the Jones Act was held applicable to give redress to an injured stevedore in International Stevedoring Co. v. Haverty, [272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926)] . . . ." 149 F.2d 98, 101 (3rd Cir.)

Haverty did extend Jones Act coverage to stevedores and permitted suit against the stevedore company.[5] Haverty showed that even very early in the history of the Jones Act the Court construed the scope of the Act broadly. Similarly in Seas Shipping, supra, a seaworthiness case, the Court stated:

All the considerations which gave birth to the liability and have shaped its absolute character dictate that the owner *should not be free to nullify it by parcelling out his operations to intermediary employers whose sole business is to take over portions of the ship's work* or by other devices which would strip the men performing its service of their historic protection. 328 U.S. at 95, 66 S.Ct. at 877 (emphasis supplied).

Of Jones Act liability, 46 U.S.C. § 688, the same may be said. *Cf.* Warner v. Goltra, 293 U.S. 155, 157–158, 55 S.Ct. 46, 79 L.Ed. 254 (1934) (Cardozo, J.); Cortes v. Baltimore Insular Line, Inc., *supra.* As Mr. Justice Black said for a unanimous Court in Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S. Ct. 246, 252, 87 L.Ed. 239 (1942):

[The Jones Act] is to be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards . . . . Being an integral part of the maritime law, rights fashioned by it are to be implemented by admiralty rules not inconsistent with the Act . . . . (Citations omitted.)

*Accord,* Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

5. Shortly after *Haverty* Congress passed the Longshoreman's Act, 33 U.S.C. § 903 et seq., which replaced the Jones Act as the remedy for longshoremen against their employers. The provisions of the Longshoreman's Act, of course, specifically incorporate the liberal provisions of the Jones Act such as elimination of assumption of risk and the fellow-servant rule. 33 U.S.C. § 905. They also provide very specific compensation for different types of disability. 33 U.S.C. § 908. Thus, while Congress repealed the result in *Haverty* with a new statute, it did not change the concept of extending liberal protection to maritime workers which *Haverty* advanced.

It is true that even in Jones Act cases there are various dicta, including Mr. Justice Reed's in Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 791, 69 S.Ct. 1317, 1322, 93 L.Ed. 1692 (1949) (general agent for owner of ship not liable under Jones Act) to the effect that ". . . under the Jones Act only one person, firm or corporation can be sued as employer." With the exception of *Schiemann*, however, none is in the context of a seaman employed on a ship who is seeking recovery against the shipowner even while he is employed by someone else. In none of those cases, as in *Schiemann* and this case, did the shipowner escape responsibility for the seaman's injury. The only question in those cases was whether an additional defendant was available.

*Schiemann* mentions none of the Supreme Court cases previously alluded to —*Desper, Cortes, Seas Shipping, Haverty*. Rather, it tracks the railroad cases which involve different underlying common law concepts. Even so, at ordinary common law a person may be the servant of two masters at one time as to one act, if the service to one does not involve abandonment of the service to the other. Restatement (Second) of Agency § 226 (1957). One doubts whether today's Court facing the problem afresh would decide the lead case on which *Schiemann* rests, 269 F.2d at 598, Robinson v. Baltimore & Ohio Railroad, 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849 (1915) (Pullman car porter not entitled to FELA recovery against railroad company), as it was decided. Later judicial decisions recognize that the existence of an employee-employer relationship must be determined not technically but in light of the liberal purposes remedial social legislation is designed to serve and in the light of economic reality. *E. g.*, United States v. W. M. Webb, Inc., *supra*; Rutherford Food Corp. v. McComb, 331

U.S. 722, 723–726, 729–730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). *See also* Cosmopolitan Shipping Co. v. McAllister, supra, 337 U.S. at 790–791, 69 S.Ct. 1317.

The argument made here does not mean that as between the concessionaire and the shipowner they may not contract that the former will save the latter harmless in situations in which the shipowner is held liable to the seaman under the Jones Act. It would mean, however, that by contract with the concessionaire the shipowner could not escape liability to a seaman for the shipowner's negligence in failing to provide a safe bunk ladder, the claim made here. That liability would accrue in the words of the statute when the seaman suffers "personal injury in the course of his employment . . . ." A seaman's "course of employment" in the service of the ship includes using the ladder to his bunk to go to bed. *Cf.* Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959) (liability for deck accident aggravating tuberculosis); Hiltz v. Atlantic Refining Co., 151 F.2d 159, 160 (3rd Cir. 1945) (liability for improper cabin ventilation).

To construe the Jones Act as the majority does leaves a gaping hole in its coverage: those who are concededly seamen but hired by a concessionaire are not entitled to recovery under the Jones Act for the shipowner's negligence; they cannot recover in the usual case against the concessionaire because, except in connection with the equipment or management of the concession, the concessionaire has nothing to be negligent about. They are not wards of the admiralty, they are orphans at sea, with the crumb of concessionaire's liability for maintenance and cure, but without the bread-and-water sustenance of liability on the part of anyone for negligence under Jones Act principles.[6] In my view

---

6. While she retained rights to sue the shipowner for general negligence or for unseaworthiness and while as the majority suggests in footnote 5 these were decided against her, they were decided by the trial judge *without the benefit of a trial by jury* to which under the Jones Act she would have been entitled and subject, at

such a result could not have been intended by a Congress which had in mind that, as Warner v. Goltra, *supra*, 293 U. S. at 159, 55 S.Ct. at 48, states, "An ancient evil was to be uprooted, and uprooted altogether. It was not to be left with fibers still clinging to the soil." A seaman not to be able to recover under the Jones Act against the ship for the ship's negligence?[7] What hath Congress wrought?

least as regards her claim of general negligence, to the defenses that she had assumed the risk or had been injured as the result of negligence of a fellow servant.

7. The majority says in its footnote 8 that United States v. W. M. Webb, Inc., 397 U.S. 179, 192, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970) and Savard v. Marine Contracting, Inc., 471 F.2d 536, 540 (2nd Cir. Dec. 26, 1972), make it "crystal clear that under the Jones Act the shipowner is not always the employer of every person given seaman status abroad the vessel." In *W. M. Webb*, the Court said, however, that ". . . except where there is nearly total relinquishment of control through a bareboat, or demise, charter, the owner may nevertheless be considered, under maritime law, to have sufficient control to be charged with the duties of an employer." 397 U.S. at 192, 90 S.Ct.

at 856. Here there was neither a bareboat nor a demise charter. In *Savard*, while rejecting a request to charge that a seaman may have more than one employer for Jones Act purposes, the court held that the trial court properly charged the jury that the seaman there (a diver on a barge under bareboat charter) could be deemed the subagent of his direct employer which hired him as agent for the bareboat charterer and that "the jury could find that under the Jones Act Perini [the bareboat charterer] was Savard's employer if it had sufficient control of the operation." 471 F.2d 541. Here surely Export had sufficient "control of the operation."