Gerard O'HARA and Lisa O'Hara,
Plaintiffs–Appellants,

v.

WEEKS MARINE, INC. and Collazo Contractors, Inc., Defendants–Appellees.

Docket No. 00–7872.

United States Court of Appeals, Second Circuit.

Argued: March 15, 2001.

Decided: April 1, 2002.

58

Paul C. Matthews, New York, NY, for Plaintiffs–Appellants.

David R. Hornig, Nicoletti Hornig Campise & Sweeney (Julia M. Moore, of counsel), New York, NY, for Defendant–Appellee Weeks Marine, Inc.

William M. Kimball (James P. O'Connor, of counsel), New York, NY, for Defendant–Appellee Collazo Contractors, Inc.

Before: LEVAL and SACK, Circuit Judges, and RAGGI, District Judge.*

SACK, Circuit Judge.

The plaintiffs, Gerard O'Hara, a dockworker, and his wife Lisa,[1] appeal from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*) granting the

defendants' motion for summary judgment and denying the plaintiff leave to amend his complaint to allege additional causes of action under New York State law.

O'Hara brought suit under the Jones Act, 46 App.U.S.C. § 688 (Supp.2001), and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA"), for injuries he sustained while employed by Defendant Collazo Contractors, Inc. ("Collazo") to help repair piers along the waterfront in Staten Island, New York. Defendant Weeks Marine, Inc. ("Weeks"), the general contractor on the pier-reconstruction project, deployed two barges to assist with the reconstruction, and engaged O'Hara's employer Collazo as a subcontractor. O'Hara alleges that he sustained personal injuries while working aboard one of these barges.

We affirm the dismissal of O'Hara's Jones Act claims because we agree with the district court that he does not qualify as a "seaman" within the meaning of the Act. We hold, however, that the evidence suffices to create a triable issue of fact with respect to O'Hara's LHWCA claim against Weeks, and also should be factored into the district court's analysis of whether to permit O'Hara leave to replead to add state law claims. We therefore vacate and remand in part for the court's further consideration of these issues.

Central to our analysis is O'Hara's allegation, which we must credit on appeal from the grant of summary judgment, that he had been working under the direct supervision of a Weeks employee at the time of his injury. We conclude that if the trier of fact ultimately credits this allegation, it

---

* The Honorable Reena Raggi of the United States District Court for the Eastern District of New York, sitting by designation.

1. For convenience, and because the plaintiff Lisa O'Hara's claim for loss of consortium depends entirely on the claims of her husband Gerard, we refer in the remainder of this opinion only to the principal plaintiff Gerard O'Hara.

could render Weeks liable for O'Hara's injury under the federal common-law duties of care articulated by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 165–78, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), and, perhaps, under New York State law also.

## BACKGROUND

On June 18, 1990, Weeks entered into a general contract with the New York City Department of Transportation to repair and reconstruct certain parts of the Staten Island Ferry Maintenance Facility. On November 9, 1990, Weeks subcontracted with Collazo for the latter to repair stone bulkheads on a wharf at the Facility's ferry terminal. In April 1991, Collazo hired O'Hara, a member of the dockbuilder's union, to work as a dockbuilder on the project.

Weeks deployed two barges to be used in connection with the project: a "materials barge" used to store supplies and equipment, and a "crane barge," which held and transported the crane used at the construction site. Neither was self-propelled; Weeks initially transported them to the site with tugboats. Subsequently, workers on the pier, including O'Hara, moved the barges short distances within the construction site using winches and pulleys in order to place them where needed. On the date of O'Hara's accident, both barges were moored to bulkheads on the pier; neither had been moved for some two months.

O'Hara alleges that he was "assigned to" the crane barge during the five months in which he worked on the pier-reconstruction project. He testified that "[m]ore than half of [his] working time was spent working on either the crane barge or the materials barge." Pl.'s Aff. dated Dec. 14, 1995, ¶ 7. O'Hara's duties, ordinarily carried out at the direction of his foreman, a Collazo employee, included transporting and assembling construction supplies.

On or about September 16, 1991, a bundle of "stay-in-place forms"—steel partitions used for poured concrete—fell into the water when a sling on the crane that had been transporting them broke. The next day, according to Weeks's statement of undisputed material facts, O'Hara helped divers recover and clean these forms.

O'Hara testified that because of the substantial weight of the forms, the crane would ordinarily have been used to lift them, but on the day he was injured, September 17, 1991, "[t]he crane was not available."[2] Pl.'s Aff. dated Jan. 27, 1999, ¶ 6. Leo Nobiger, a Weeks employee supervising the construction, therefore "told [O'Hara] to move [the stay-in-place forms] by hand." *Id.* O'Hara alleges that while performing this job without assistance, he strained himself severely and sustained "a hernia with serious complications." *Id.*

On September 14, 1994, O'Hara filed suit against Weeks and Collazo under the Jones Act and the LHWCA in the United States District Court for the Eastern District of Ney York.[3] On June 12, 1996, the

---

**2.** The plain inference to be drawn from the evidence before us is that the crane was unavailable because its sling had broken the previous day. But O'Hara claims on appeal that the need to lift the stay-in-place forms manually was "brought on by the fact that there was no engineer available to operate the crane of the crane barge." Appellant's Br. at 4. His citation to the record on appeal, however, does not support this claim; nor can we locate evidence elsewhere in the record to substantiate it.

**3.** Weeks and Collazo subsequently filed cross-claims against each other, and Collazo initiated a third party action against The Home Insurance Company. On May 5, 2000, the

court (I. Leo Glasser, *Judge*) granted Weeks's motion for summary judgment on O'Hara's Jones Act claim because it concluded that the barges did not constitute "vessels in navigation" and that O'Hara did not qualify as a "seaman" under the Jones Act. *O'Hara v. Weeks Marine, Inc.*, 928 F.Supp. 257, 261 (E.D.N.Y.1996) ("*O'Hara I*"). Weeks and Collazo subsequently moved for summary judgment on the LHWCA claims. O'Hara submitted a memorandum in opposition to that motion in which he raised for the first time the possibility that Weeks might be liable to him under New York labor law. The district court construed this passing reference to state law as a motion seeking leave to amend the complaint. On October 25, 1999, the court granted summary judgment to Weeks on O'Hara's LHWCA claim and denied O'Hara leave to amend his complaint. *O'Hara v. Weeks Marine, Inc.*, No. 94–CV–4322, 1999 WL 1129620, 1999 U.S. Dist. LEXIS 18551 (E.D.N.Y. Oct.25, 1999) ("*O'Hara II*").[4] This appeal followed.

## DISCUSSION

### I. Standard of Review

■ We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). A district court must grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### II. Overview of the Statutory Scheme

#### A. The Jones Act

■ The Jones Act confers a cause of action on "[a]ny seaman" who suffers a "personal injury in the course of his employment." 46 App.U.S.C. § 688(a) (Supp. 2001). Congress enacted the Act in 1920 in order to remove then-existing barriers to the right of seamen to recover damages for injuries caused by their employers' negligence. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *see also McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 341–42, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (chronicling congressional attempts to create a negligence action for seamen, culminating in the Jones Act). The Jones Act provides "heightened legal protections [to] seamen . . . because of their exposure to the 'perils of the sea.'" *Chandris*, 515 U.S. at 354, 115 S.Ct. 2172 (citations omitted). While land-based employees—including land-based maritime workers—typically can recover from their employers for work-related injuries only through scheduled no-fault

---

parties stipulated to the dismissal of these claims.

**4.** In his memorandum of law in opposition to the defendants' motion, O'Hara conceded that in light of the district court's decision in *O'Hara I*, his claim against Collazo under the

LHWCA must be dismissed. In *O'Hara II*, the district court therefore granted Collazo's motion for summary judgment on the plaintiff's LHWCA claim against it without discussion. *O'Hara II*, 1999 WL 1129620, at *1 n. 1, 1999 U.S. Dist. LEXIS 18551, at *4 n. 1.

compensation schemes, the Jones Act gives seamen an express right of action in tort because of their status as " 'wards of the admiralty' " who " 'are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour.' " *Id.* at 354–55, 115 S.Ct. 2172 (quoting *Harden v. Gordon,* 11 F. Cas. 480, 485, 483 (C.C.Me.1823) (No. 6,047) (Story, *J.*)).

## B. The LHWCA

■ The LHWCA "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Howlett v. Birkdale Shipping Co.,* 512 U.S. 92, 96, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994); *accord Gravatt v. City of N.Y.,* 226 F.3d 108, 115 (2d Cir.2000). Employees eligible for LHWCA benefits include "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker. . . ." 33 U.S.C. § 902(3). But the LHWCA expressly excludes, *inter alia,* "a master or member of a crew of any vessel." *Id.* § 902(3)(G). Under the LHWCA, an "employer" is one "whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States." *Id.* § 902(4).

■ The LHWCA entitles employees to no-fault compensation payments for work-related injuries. As with most other workers' compensation schemes, this entitlement displaces the employee's common-law right to bring an action in tort against his or her employer. The LHWCA limits employer liability to the provision of scheduled no-fault compensation payments. *Id.* §§ 904, 905(a). An injured LHWCA employee may, however, sue a third party—typically the owner or charterer of the vessel on which he or she sustained the injury—for negligence. *Id.* § 933(a); *accord Gravatt,* 226 F.3d at 115.

■ The LHWCA and the Jones Act complement one another. The Jones Act allows seamen to recover for negligence against their employers; the LHWCA authorizes maritime workers *other than* seamen to recover for negligence, but only against parties *other than* their employers. *See Chandris,* 515 U.S. at 355–56, 115 S.Ct. 2172 (describing these two acts as "mutually exclusive compensation regimes"). Indeed, while the Jones Act does not define "seaman," its definition begins where the definition of the term "employee" in the LHWCA ends. *Cf. Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 86–87, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) (comparing the two statutes). It is therefore " 'odd but true that the key requirement for Jones Act coverage now appears in another statute.' " *Chandris,* 515 U.S. at 356, 115 S.Ct. 2172 (quoting *Wilander,* 498 U.S. at 347, 111 S.Ct. 807).

## III. O'Hara's Jones Act Claims

### A. Procedural Posture

O'Hara brought claims in the district court under the Jones Act against both Collazo and Weeks. At oral argument before us, however, O'Hara's counsel represented that his client intended to appeal the dismissal of his Jones Act claim against Collazo only.

The district court dismissed O'Hara's Jones Act claims against both Collazo and Weeks because it concluded (1) that the barge on which O'Hara sustained his injury was not a "vessel in navigation" under the test set forth in *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172; and (2) that O'Hara did not qualify as a "seaman" within the

meaning of the Jones Act. *O'Hara I,* 928 F.Supp. at 259–61. O'Hara contests these conclusions on appeal. Collazo argues that we should affirm the district court's order on the ground that O'Hara neither alleged nor produced evidence to show that Collazo acted negligently.

Because the district court dismissed both of O'Hara's Jones Act claims upon Weeks's motion for summary judgment, in which Collazo declined to join, *O'Hara I,* 928 F.Supp. at 258 n. 1, the district court had no occasion to consider the issue of Collazo's negligence in connection with the Jones Act claims. Nor did the parties litigate this issue in connection with O'Hara's LHWCA claims, because O'Hara conceded that he could not bring an LHWCA action for negligence against Collazo, his employer. *O'Hara II,* 1999 WL 1129620, at *1 n. 1, 1999 U.S. Dist. LEXIS 18551, at *4 n. 1.

We need not and do not reach the issue Collazo urges upon us—its lack of negligence. Neither must we decide whether the district court correctly concluded that the Weeks barges were not "vessels in navigation." Because we agree with the court that O'Hara does not qualify as a "seaman" under the Jones Act, we affirm on that ground.

*B. O'Hara's Status as a "Seaman"*

Only seamen are "entitled to sue for damages under the Jones Act." *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 553, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). To prove "seaman status," an employee must establish his or her (1) " 'employment-related connection,' " (2) " 'to a vessel in navigation.' " *Tonnesen v. Yonkers Constructing Co.,* 82 F.3d 30, 32 (2d Cir.1996) (quoting *Wilander,* 498 U.S. at 354–55, 111 S.Ct. 807). The district court concluded that O'Hara failed to establish either element. *O'Hara I,* 928 F.Supp. at 259–61.

An "employment-related connection" to a vessel exists if two conditions are satisfied: First, the "worker's duties must contribute to the function of the vessel or to the accomplishment of its mission"; second, the worker's connection to the vessel must be "substantial in both its duration and its nature." *Tonnesen,* 82 F.3d at 32 n.2 (citing *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172).

The former inquiry focuses on "the plaintiff's employment at the time of the injury." *Fisher v. Nichols,* 81 F.3d 319, 322 (2d Cir.1996). The putative seaman need not "aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work." *Wilander,* 498 U.S. at 355, 111 S.Ct. 807. This standard is liberal. The Supreme Court has said that "[a]ll who work at sea in the service of a ship are *eligible* for seaman status." *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172 (emphasis in original; internal quotation marks and citation omitted).

The second inquiry focuses on "whether the plaintiff derives his livelihood from sea-based activities." *Fisher,* 81 F.3d at 322. The Court has described this inquiry as "status based": "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Chandris,* 515 U.S. at 361, 115 S.Ct. 2172. The Jones Act does not protect workers with "only a transitory or sporadic connection to a vessel in navigation." *Id.* at 368, 115 S.Ct. 2172.

Whether an employee qualifies as a seaman "is a mixed question of law and

fact." *Papai*, 520 U.S. at 554, 117 S.Ct. 1535. Summary judgment is appropriate "where the facts and the law will reasonably support only one conclusion." *Wilander*, 498 U.S. at 356, 111 S.Ct. 807; *see also Chandris*, 515 U.S. at 371, 115 S.Ct. 2172 (noting that summary judgment should be granted "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation").

We conclude that O'Hara fails the second part of the test for determining whether he had an "employment-related connection" to a vessel: the extent to which he "derive[d] his livelihood from sea-based activities." *Fisher*, 81 F.3d at 322. O'Hara's *connection* to the vessel *qua* vessel was insufficiently "substantial in terms of both its duration and its nature," *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172, to support the conclusion that he qualifies as a seaman.

To be sure, O'Hara spent more than half his working hours during a five-month period aboard the barges, but he spent all of that time performing tasks related to repair of the Staten Island pier, while the barges were secured to the pier. O'Hara belonged to the dockbuilders union. He held no Coast Guard license or other "seaman's papers." He never spent the night aboard a barge. Neither did he ever operate a barge or otherwise assist in its navigation. *See Papai*, 520 U.S. at 555, 117 S.Ct. 1535 ("[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."); *Chandris*, 515 U.S. at 359–60, 115 S.Ct. 2172 (clarifying that seaman status is a function of the worker's "relationship as such to the vessel and its operation in navigable waters") (internal quotation marks and citation omitted). Finally, no evidence suggests that

O'Hara had an employment-related connection to another vessel.

Even assuming the barges were "vessels in navigation," O'Hara thus produced no evidence from which a reasonable jury could conclude that he "derives his livelihood from sea-based activities." *Fisher*, 81 F.3d at 322. At most, the evidence establishes that O'Hara had a "transitory or sporadic" connection to the Weeks barges, the relevant "vessels in navigation," *in their capacity as* vessels in navigation. Such a minimal connection does not suffice to confer seaman status on him. *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172. Because O'Hara does not qualify as a "seaman" within the meaning of the Jones Act, we affirm the dismissal of his Jones Act claims.

## IV. O'Hara's Claims Under the LHWCA

### A. The Scindia *Duties*.

O'Hara brought his LHWCA claim against Weeks under 33 U.S.C. § 905, which provides in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party. . . . If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

*Id.* § 905(b).

The LHWCA does not define negligence for the purpose of actions against third-party vessel owners under § 905(b). But in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court articulated federal common-law standards

to guide judicial determinations of liability under this subsection. *See id.* at 165–78, 101 S.Ct. 1614. These so-called *"Scindia* duties," recently summarized in *Gravatt,* 226 F.3d at 120–21, establish duties of care owed by vessel owners to stevedores and their employees, and to other contractors and non-longshoring harbor workers.

■ *1. The Turnover Duty.* "First, before turning over the ship or any portion of it to the stevedore [or other contractor employing non-longshoring harbor workers], the vessel owner must exercise 'ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety.' " *Id.* at 120–21 (quoting *Scindia,* 451 U.S. at 167, 101 S.Ct. 1614). This "turnover duty" also imposes on vessel owners (and others falling within the statutory definition of "vessel") a duty to warn stevedores or other contractors of hazards of which the "vessels" know or should know and which are unknown or would not be obvious to the stevedore. *Howlett,* 512 U.S. at 98–99, 114 S.Ct. 2057.

■ *2. The Active Control Duty.* "Second, once stevedoring operations [or other operations by a contractor] have begun, the vessel [owner and others falling within the statutory definition of "vessel"] will be liable 'if it actively involves itself in [those] operations and negligently injures a longshoreman [or other harbor worker],' " or if the owner acts negligently with respect to hazards " 'in areas, or from equipment, under the active control of the vessel during the stevedoring [or contractor's] operation.' " *Gravatt,* 226 F.3d at 121 (quoting *Scindia,* 451 U.S. at 167, 101 S.Ct. 1614) (emphases omitted).

■ *3. The Duty to Intervene.* Third, "[w]ith respect to obvious dangers in areas under the principal control of the stevedore, the vessel owner [and others falling within the statutory definition of "vessel"] must intervene if it acquires actual knowledge that (1) a condition of the vessel or its equipment poses an unreasonable risk of harm and (2) the stevedore [or other contractor] is not exercising reasonable care to protect its employees from that risk. *Id.* (citing *Scindia,* 451 U.S. at 175–76, 101 S.Ct. 1614).

### B. Weeks's Potential Liability.

■ The district court found no evidence that Weeks breached its *Scindia* duties. *O'Hara II,* 1999 WL 1129620, at *2, 1999 U.S. Dist. LEXIS 18551, at *8–*9. Specifically, the court concluded that O'Hara:

> failed to proffer any evidence attributable to a defective condition on the barge, nor any neglect on the part of defendant Weeks Marine that contributed to O'Hara's injury. Nor ha[s] [O'Hara] offered any evidence as to Weeks'[s] knowledge—actual or constructive—of a dangerous condition that would impose a duty to act.

*Id.,* 1999 WL 1129620, at *2, 1999 U.S. Dist. LEXIS 18551, at *9. We disagree. Despite the record's scant evidence respecting Weeks's conduct, we hold that a reasonable jury could find, based upon it, that Weeks breached its "duty to intervene" or its "active control" duty.

A vessel owner's *Scindia* duty to intervene arises upon actual knowledge of (1) a risk created by a dangerous condition; and (2) a high probability that the stevedoring entity or other contractor—here, Collazo— will not exercise reasonable care under the circumstances to protect its employees from that risk. *Gravatt,* 226 F.3d at 121

66

(citing *Scindia,* 451 U.S. at 175–76, 101 S.Ct. 1614).

On September 16, 1991, the day before O'Hara sustained his injury, the sling on Weeks's crane, which normally would have been used to lift the stay-in-place forms into position, broke. O'Hara testified that Leo Nobiger, an employee of Weeks supervising the project, ordered him to help divers recover these forms. According to O'Hara, Nobiger told him to lift the forms "by hand" and without "mechanical assistance," because the Weeks crane was "not available." Pl.'s Aff. dated Jan. 7, 1999, ¶ 2; Pl.'s Aff. dated Jan. 27, 1999, ¶ 6. O'Hara further testified that at the time of his injury, no other Collazo employees were available to assist him and that Nobiger alone "chose the method" by which O'Hara would lift the forms. *Id.* ¶ 5.

■ A reasonable jury could conclude that manually lifting steel forms—a task that, according to O'Hara's affidavit testimony, is ordinarily performed by a crane—and doing so alone, constitutes an unreasonably dangerous activity. The district court doubted that "lift[ing] 'very heavy' steel forms" constitutes a "dangerous condition sufficient to trigger liability under *Scindia,*" but concluded that in any event this condition "presented an obvious danger, of which O'Hara should have been aware." *O'Hara II,* 1999 WL 1129620, at *2, 1999 U.S. Dist. LEXIS, at *9. Assumption of risk is not, however, a defense in an LHWCA action; the statute establishes a comparative rather than a contributory negligence scheme. *Evans v. Transportacion Mar. Mexicana SS "Campeche",* 639 F.2d 848, 852 (2d Cir.1981) ("Congress specifically incorporated the admiralty concept of comparative negligence in place of the traditional terrene doctrines of contributory negligence and assumption of the risk ...."); *see also id.* at 857 n. 10 (rejecting the doctrines of contributory negli-

gence and assumption of risk as incompatible with the LHWCA's legislative history). The extent, if any, of O'Hara's comparative negligence remains for the trier of fact to determine. *See Moore v. M.P. Howlett, Inc.,* 704 F.2d 39, 42 (2d Cir.1983) (noting that a "shipowner is not relieved of liability as a matter of law simply because it relied ... on the stevedore's judgment to proceed with the work in spite of [a dangerous] condition") (internal citations omitted).

A reasonable jury could further conclude that Nobiger, as Weeks's agent, knew or should have known of the risk to O'Hara. Nobiger allegedly told O'Hara to lift the steel forms "by hand" and "without mechanical assistance." If the trier of fact were to credit these allegations, it could infer that Nobiger knew that lifting the forms without the mechanical assistance ordinarily provided by the Weeks crane posed an unreasonable risk. And if, as O'Hara alleges, no other Collazo employees were available to help, the trier of fact could infer that Nobiger knew or should have known that Collazo, O'Hara's employer, could not exercise due care under the circumstances to protect O'Hara from this risk. *See Scindia,* 451 U.S. at 175, 101 S.Ct. 1614. Viewed in the light most favorable to O'Hara, then, the evidence suffices to raise a genuine issue of material fact as to whether Weeks, through the actions of its employee Nobiger, breached its duty to intervene.

■ For substantially the same reasons, O'Hara's testimony suffices to withstand summary judgment on the issue of whether Weeks breached its "active control" duty. Viewed in the light most favorable to O'Hara, the evidence could support a finding that Nobiger, who had been actively supervising the barge's salvaging operation for Weeks, knew of the risks posed by that operation, but negligently ordered

O'Hara to lift the stay-in-place forms none-theless. *See Scindia,* 451 U.S. at 167, 101 S.Ct. 1614 (noting that a vessel owner may bear liability "if it actively involves itself in the cargo operations and negligently injures a longshoreman"); *see also Lubrano v. Royal Neth. S.S. Co.,* 572 F.2d 364, 367 (2d Cir.1978) (observing that if evidence shows that "a ship's officer, after being notified of [an] open and obvious danger," nonetheless had "men keep working or join[ed] in the stevedore's decision to do so, then there would be a jury question" as to § 905(b) liability).

Because issues within the province of the trier of fact could subject Weeks to liability as a third-party vessel owner pursuant to 33 U.S.C. § 905(b) and the relevant duties of care articulated by the Supreme Court in *Scindia,* we conclude that the district court's grant of summary judgment to Weeks on O'Hara's LHWCA claim was mistaken.

## C. Weeks as a Dual–Capacity Defendant

 Weeks argues that even assuming the existence of these questions of fact, our decision in *Gravatt* entitles it to immunity as a dual-capacity defendant. Weeks's assumption that it qualifies as a

dual-capacity defendant in the same manner as did the defendant in *Gravatt,* however, is wrong. "Dual capacity" refers to a defendant's relationship *to the plaintiff,* i.e., as the plaintiff's "employer," on the one hand, and as the "vessel" alleged to have caused the plaintiff's injury, on the other. In *Gravatt,* the defendant both owned the vessel and directly employed the plaintiff. *See* 226 F.3d at 111. Here, Weeks owned the vessel but never formally employed the plaintiff. By contrast to the situation in *Gravatt,* Weeks does not relate to the plaintiff O'Hara in two distinct capacities—as vessel owner and as employer—for the purpose of analyzing its § 905(b) liability. Weeks's argument that it enjoys immunity from liability under *Gravatt* is thus unavailing.[5]

## V. The New York Labor Law Claims

O'Hara's complaint asserts claims under the Jones Act and the LHWCA. In his memorandum in opposition to Weeks's motion for summary judgment on the LHWCA claim, however, O'Hara argued that he "may rely" on duties imposed on Weeks by New York labor law. The district court generously construed this as "an informal motion to amend the complaint," Tr. of Oral Argument at 5, but

---

5. Weeks may, however, qualify as a dual-capacity defendant in a different respect, namely, as both the vessel owner and as O'Hara's "employer" under the borrowed-servant doctrine. Arguably, at the time of O'Hara's accident, Weeks had borrowed O'Hara from Collazo to assist it in salvaging the steel forms; and if Weeks thereby became O'Hara's "borrowing employer," then it may be entitled to LHWCA immunity from O'Hara's negligence suit. But we have yet to decide whether the borrowed-servant doctrine applies in the context of the LHWCA. *See Am. Stevedoring Ltd. v. Marinelli,* 248 F.3d 54, 64 (2d Cir.2001) (collecting cases from other circuits applying the borrowed-servant doctrine to the LHWCA context). Neither party raised this issue before the district court

so far as we can tell; and O'Hara, not Weeks, alluded to it on appeal, and then only by citing in his reply brief *Savard v. Marine Contracting, Inc.,* 471 F.2d 536 (2d Cir.1972), a Jones Act case in which the plaintiff requested "that the jury be charged that [he] was a loaned servant," *id.* at 540. Because "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal," *Maska U.S., Inc. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 79–80 (2d Cir.1999), and that, even if raised in the district court, "[n]ormally, we will not consider arguments raised for the first time [on appeal] in a reply brief . . . ," *Keefe v. Shalala,* 71 F.3d 1060, 1066 n. 2 (2d Cir.1995) (citation omitted), we do not address this issue.

denied it, principally on the ground that the claims would be barred by New York's three-year statute of limitations.[6] *O'Hara II*, 1999 WL 1129620, at *3, 1999 U.S. Dist. LEXIS 18551, at *10–*11.

### A. Standard of Review

We review the district court's decision to deny O'Hara leave to amend his complaint for abuse of discretion. *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir.1999). In general, a plaintiff may amend his or her complaint to include otherwise time-barred claims if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). Where the amendment would involve a new cause of action, however, the district court may deny leave unless "the original complaint gave the defendant fair notice of the newly alleged claims." *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir.1998).

### B. New York Labor Law

O'Hara proposes new claims under N.Y. Lab. Law §§ 200 and 241(6).[7] Section 200 requires owners of construction sites[8] "to provide reasonable and adequate protection ... to the persons employed therein or lawfully frequenting such places." N.Y. Lab. Law § 200(1); *Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 316–17, 445 N.Y.S.2d 127, 129, 429 N.E.2d 805, 807 (1981) ("Section 200 of the Labor Law merely codified the common-law duty imposed upon an owner or general contractor to provide construction site workmen with a safe place to work."). Owners bear liability under § 200 only if they (1) exercise supervisory control over the activity that causes the injury, *see Lombardi v. Stout*, 80 N.Y.2d 290, 295, 590 N.Y.S.2d 55, 57, 604 N.E.2d 117, 119 (1992); and (2) have either actual or constructive notice of the hazard posed by that activity, *see Mantovi v. Nico Constr. Co.*, 217 A.D.2d 650, 651, 629 N.Y.S.2d 486, 487 (2d Dep't 1995).

Section 241(6) requires contractors and construction site owners and their agents when constructing or demolishing buildings "to provide reasonable and adequate protection and safety to persons employed therein" and to ensure that construction sites comply with safety regulations promulgated by the Commissioner of the New York State Department of Labor. *See* N.Y. Lab. Law § 241(6); *Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 501–02, 618 N.E.2d 82, 86, 601 N.Y.S.2d 49, 53 (1993).

### C. Analysis

The district court denied O'Hara's mo-

---

**6.** O'Hara's failure to make a formal motion is not dispositive. *See McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir.1992) (noting that where the plaintiff has made its desire to amend clear, the lack of a formal motion does not require the district court to deny leave to amend; the decision to grant or deny leave remains within the court's discretion).

**7.** On appeal, O'Hara addresses his arguments to §§ 200 and 240 of the Labor Law, rather than §§ 200 and 241(6). We confine our analysis to the provisions cited to the district court.

**8.** Barges and docks may be deemed construction sites for the purposes of both sections. *See, e.g., Cammon v. City of New York*, 95 N.Y.2d 583, 590, 744 N.E.2d 114, 119, 721 N.Y.S.2d 579, 584 (2000) (sections 200 and 241(6) apply to the City as the owner of municipal piers); *Rigopoulos v. State*, 236 A.D.2d 459, 460, 653 N.Y.S.2d 667, 699 (2d Dep't 1997) (applying the same as to a floating barge used in bridge repair).

tion to amend in a summary fashion.[9] We have some doubt about its analysis.

■ We agree that a district court may deny leave to amend the complaint if the amendment would be futile. *See, e.g., Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995). O'Hara's proposed § 241(6) claim may be futile because he fails to allege that Weeks violated a specific provision of a New York safety code. New York case law suggests that to state a cause of action under § 241(6), a plaintiff must plead and prove violations of specific regulations. *See Ross,* 81 N.Y.2d at 502, 618 N.E.2d at 86, 601 N.Y.S.2d at 53–54 (1993) (holding that plaintiff's "§ 241(6) claim must fail because of the inadequacy of his allegations regarding the regulations defendants purportedly breached"); *Charles v. City of N.Y.,* 227 A.D.2d 429, 430, 642 N.Y.S.2d 690, 691 (2d Dep't 1996) (granting summary judgment to the defendant where the plaintiff did not plead a breach of "any concrete specification of the Industrial Code"). If a § 241(6) claim must allege that the defendant violated a specific rule or regulation, then the denial of O'Hara's proposed amendment would be affirmable on this ground alone. But New York law is not altogether clear in this regard because § 241(6) does not on its face require that a plaintiff allege the violation of a specific rule or regulation.

With respect to O'Hara's proposed claim under § 200, the district court may have premised its dismissal on the same view of the facts that led it to dismiss O'Hara's LHWCA claim at the summary judgment stage, namely, that the plaintiff failed to offer evidence of a dangerous or defective condition that would impose a duty to act on Weeks under *Scindia. See O'Hara II,* 1999 WL 1129620, at *2, 1999 U.S. Dist. LEXIS 18551, at *9. Applying Fed. R.Civ.P. 15(c), the district court apparently concluded that because O'Hara failed to demonstrate that Weeks had actual or constructive knowledge of a hazardous condition sufficient to trigger a *Scindia* duty, O'Hara's proposed claim under § 200 could not "relate back" to the "conduct, transaction, or occurrence" that allegedly gave rise to his LHWCA claim. *See O'Hara II,* 1999 WL 1129620, at *3, 1999 U.S. Dist. LEXIS 18551, at *10–*11 (denying the plaintiff leave to amend his complaint to add state law claims "for the same reasons set forth above," i.e., in connection with the LHWCA claim against Weeks, and citing *Mantovi* for the proposition that § 200 liability requires that the owner have actual or constructive notice).

■ If the district court denied the plaintiff leave to add a § 200 claim for this reason, it may well have erred for the reasons explained in subsection IV.B.2., *supra.* In short, a claim under N.Y. Lab. Law § 200, like a claim under 33 U.S.C. § 905(b) based on the negligence of a

9. The district court opinion discusses the issue as follows:

Although not pleaded in the Complaint, plaintiffs argue in their memorandum of law that Weeks is liable for O'Hara's injuries pursuant to N.Y. Lab. Law §§ 200 and 241(6). Because the alleged injury occurred in September of 1991, any claim under these sections is barred by the (3 year) statute of limitations. Plaintiffs' request to amend their Complaint is denied for the same reasons set forth above. *See Mantovi v. Nico Const. Co.,* 217 A.D.2d 650, 629 N.Y.S.2d 486 (2nd Dept. 1995) (absent actual or constructive notice of a defective condition, there can be no liability pursuant [to] Labor Law § 200 for failure to provide a safe place to work); *Ross v. Curtis–Palmer Hydro–Elec. Co.,* 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993) (finding of liability requires violation of the specific, safety rules and regulations promulgated by the Commissioner of the Department of Labor). *O'Hara II,* 1999 WL 1129620, at *3, 1999 U.S. Dist. LEXIS 18551, at *10–*11 (footnote describing §§ 200 and 241(6) omitted).

third-party vessel owner, may exist where a defendant has actual or constructive notice of a hazard and fails to protect workers from that hazard. *See Scindia*, 451 U.S. at 167, 175–76, 101 S.Ct. 1614; *Mantovi*, 217 A.D.2d at 651, 629 N.Y.S.2d at 487.

Rather than attempt to resolve these questions ourselves in the first instance, we remand for the district court to reconsider, in light of this opinion, whether O'Hara should be granted leave to add claims under the New York Labor Law at this stage of the proceedings.

 We note, finally, that the first allegation that Weeks may have had actual or constructive notice of the dangerous condition that injured O'Hara appears in his affidavit dated January 7, 1999, which he submitted more than five years after he filed his complaint and in opposition to Weeks's *second* motion for summary judgment. "[C]onsiderations of undue delay . . . and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58 (2d Cir.1984) (footnote omitted); *see also Ansam Assocs. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (observing that amendments tend to be "especially prejudicial" when discovery has been completed and a motion for summary judgment filed). But decisions to grant or deny leave to amend remain within "the sound discretion of the trial court," *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 87 (2d Cir.1998). The district court may wish to consider this further upon remand.

## CONCLUSION

For the foregoing reasons, we affirm the dismissal of O'Hara's Jones Act claims and his LHWCA claim against Collazo. We vacate the court's grant of summary judgment to Weeks on O'Hara's claims under the LHWCA and its denial of O'Hara's motion to amend his complaint to assert state law claims against Weeks, and remand for further proceedings consistent with this opinion.